State *v.* Sutherlin—165 Ind. 339.

---

## The State *v.* Sutherlin.

[No. 20,655. Filed October 24, 1905.]

1. CRIMINAL LAW. — *Appeal and Error.—Notice.—Form.*—Notices, to the defendant and to the clerk of the circuit court in an appeal by the State from the trial court's sustaining a plea in abatement to an indictment, that "I. G. B. M., prosecuting attorney, * * * have appealed," etc., are sufficient. p. 342.

2. SAME.—*Appeal and Error.—Notices.—Whether Part of Record of Trial Court.*—Notices of appeal, given to the defendant and to the clerk in a criminal case, are not a part of the record of the trial court and need not be filed therein nor copied into the transcript, but are a part of the record on appeal. p. 344.

3. SAME. — *Appeal and Error. —Officers. —Attorney-General. —* *Duties.*—The Attorney-General is the exclusive representative of the State in a criminal case on appeal. p. 345.

4. CRIMINAL LAW.—*Appeal and Error.—Prosecuting Attorney.*
*—Duties.*—The prosecuting attorney has the power to sign the assignment of errors in a criminal case on appeal.   p. 345.

5. APPEAL AND ERROR.—*Supreme Court Rules.—Marginal Notes.*—Where appellant has endeavored, with indifferent success, to comply with Supreme Court ·rule 3 in reference to marginal notes to his transcript and such transcript is short and the purpose of the rule is accomplished, a dismissal because of such defect will not be ordered.   p. 346.

6. JURY. — *Commissioners.—Appointment.—Statutes.—Collateral Attack.*—An indictment, returned by a grand jury selected by jury commissioners one of whom was, at the time of his appointment, and continued to be a stockholder and director in a public-service corporation against which suits triable by jury were then pending in that court, is not subject to a collateral attack by a plea in abatement, even though the statute provides that "no person shall be appointed a jury commissioner who  *  *  * is a party to or interested in a cause pending," etc.   p. 347.

7. OFFICERS. —*De Facto.—Eligibility.* — A jury commissioner, though not possessing all of the legal qualifications for appointment, is, in the discharge of the duties of such office, a *de facto* officer.   p. 350.

8. SAME.—*De ·Facto.—Collateral Attack.—Public Policy.*—The rule forbidding collateral attack on the official acts of a *de facto* officer is founded upon public policy.   p. 350.

9. SAME.—*Jury Commissioners.*—Jury commissioners are public officers and the rules of law concerning *de facto* officers apply to their official acts.   p. 351.

From Floyd Circuit Court; *William C. Utz,* Judge.

Prosecution by the State of Indiana against Ulysses G. Sutherlin.   From a judgment quashing the indictment, the State appeals.   *Reversed.*

*Charles W. Miller,* Attorney-General, *Charles L. Jewett, George B. McIntyre* and *P. B. May,* for the State.

*Alexander Dowling, Stotsenburg & Weathers* and *John W. Gaither,* for appellee.

JORDAN, J.—An indictment was returned by a grand jury of the Floyd Circuit Court at its March term, 1905, whereby appellee was charged with the crime of murder in the first degree.   A warrant was issued, and he

was arrested on May 5, 1905, and was held to answer the accusation. Prior to the return of this indictment he had not been charged before any court or officer with the crime in question. At the first opportunity afforded him he filed a plea in abatement, whereby he sought to quash and set aside the indictment, solely on the ground that James W. Dunbar, one of the two jury commissioners appointed by the Floyd Circuit Court on December 15, 1904, was, at the time of his appointment, ineligible or disqualified, and so continued to be by reason of his being a stockholder and a director of the Southern Indiana Traction Company, a corporation against which certain suits triable by a jury were at the time of his appointment pending for trial in said Floyd Circuit Court. The plea in abatement discloses that said Dunbar and the other jury commissioner acting in that capacity, on March 6, 1905, selected the jurors who constituted the grand jury for said court for said March term, 1905, which grand jury, as shown, found and returned the indictment against appellee. The State demurred to the plea in abatement for insufficiency of facts. The demurrer was overruled, to which an exception was duly reserved, and, the State having elected to stand upon its demurrer, the court sustained the plea in abatement, and rendered a judgment in favor of appellee, quashing and setting aside the indictment in controversy.

From this judgment the State appeals to this court, and assigns as error that the court erred in overruling the demurrer to the plea in abatement.

At the very threshold we are confronted with appellee's motion, made on special appearance, to dismiss this appeal for the following reasons: "(1) It does not appear that notice of an appeal by the State was given to the appellee, or to the clerk of the Floyd Circuit Court, where the judgment was rendered. (2) No assignment of errors has been filed. (3) The supposed assignment of errors filed with the transcript was not signed by the Attorney-General,

nor by any person authorized by law to represent the State in this cause at the time said pleading was filed. (4) The appellant has not caused marginal notes to be placed on each page of the transcript in their appropriate places, as required by rule three of this court."

After the judgment of the lower court there is set out in its order-book the following entry, which is embraced in the transcript in this appeal: "And now comes George B. McIntyre, prosecuting attorney, and files notice of appeal from the judgment of the Floyd Circuit Court, to Ulysses G. Sutherlin, and to Alexander Dowling, Stotsenburg & Weathers and John W. Gaither, attorneys for said defendant, notice of appeal to Charles B. Scott, clerk of the Floyd Circuit Court, and also a precipe for transcript for appeal to the Supreme Court, which notice is as follows: 'State of Indiana v. Ulysses G. Sutherlin. To Ulysses G. Sutherlin, Alexander Dowling, Stotsenburg & Weathers and John W. Gaither, attorneys for defendant. Take notice that I, George B. McIntyre, prosecuting attorney of the fifty-second judicial circuit, have appealed from the judgment of the Floyd Circuit Court in the above-entitled action, made and entered in said court on the 24th day of May, 1905. George B. McIntyre, prosecuting attorney. Notice of the foregoing appeal and service and receipt of a copy thereof are hereby acknowledged this 24th day of May, 1905. A. Dowling, attorney for defendant.' "

A notice addressed to the clerk of the lower court is contained in this entry, and is in the same words and figures as the notice to appellee. It was served on the clerk on May 24, 1905, and the service thereof duly acknowledged by that official. The transcript and the assignment of errors were each filed in the office of the Clerk of the Supreme Court on May 29, 1905.

The objection interposed by appellee's learned counsel to the notices in controversy is that they do not allege, as required by the statute, that the State of Indiana has ap-

pealed, but merely aver that "I, George B. McIntyre, prosecuting attorney of the fifty-second judicial circuit, have appealed," etc.    It is therefore argued that the notices fail to show that the State has appealed from the judgment. This contention, to say the least, under the circumstances, is highly technical, and we can not yield to it our concurrence.

The criminal code, as enacted by the legislature of 1905, was in full force and effect at and prior to the time of the taking of this appeal, and possibly its provisions govern therein, unless it can be said that the repealing section of the statute of 1905, pertaining to criminal procedure and public offenses, requires a holding that the criminal code of 1881 must control.    But it is wholly immaterial which of these codes govern, for the reason that, so far as their provisions are applicable to the question as here presented, they are substantially alike.    Section 1955 Burns 1901, §1882 R. S. 1881, authorizes an appeal by the State from a judgment quashing or setting aside an indictment or information.    Acts 1905, p. 584, 656, §325, authorizes an appeal from a judgment quashing or setting aside an indictment or affidavit.

As a material step in taking an appeal, the State is required to serve a written notice upon the clerk of the court wherein the judgment was rendered, stating that the appellant, *i. e.,* the State of Indiana, appeals to the Supreme or Appellate Court, as the case may be, from the judgment, and a similar notice must be served upon the defendant or his attorney.    See §1960 Burns 1901, §1887 R. S. 1881; and Acts 1905, p. 584, 650, §330.    The statute declares that an appeal, if the court is in session—that is, the court to which the appeal is taken—shall stand for trial immediately after filing the transcript and notice of appeal.    See §1962 Burns 1901, §1889 R. S. 1881; and Acts 1905, p. 584, 657, §332.

It will be observed that at the head of the notices in question the cause is entitled, and the day upon which the judgment in the cause entitled was rendered by the Floyd

Circuit Court is stated.   It is true that each notice states
that "George B. McIntyre, prosecuting attorney of the
fifty-second judicial circuit," he being the proper prose-
cuting attorney, has appealed, instead of stating in *haec
verba* that the State of Indiana or the appellant has or had
appealed.   While the notices in this respect were not a
literal compliance with the statute, still they were certainly
sufficient to subserve the purpose thereof by warning or
notifying both the clerk and appellee that the State, through
its proper official, had appealed from the judgment which
was rendered in the cause in question.   This is the only
reasonable interpretation that can be placed upon or ac-
corded to the notices in controversy.   Both appellee and
the clerk must have known, or at least they must be pre-
sumed to have known, that under the statute the State was
the only party that could prosecute an appeal from the judg-
ment to the Supreme Court, and that, under the circum-
stances, what was meant and intended by the statement that
the prosecuting attorney appealed was that the appeal was
to be taken by that official in the name of and on behalf of
the State of Indiana, of which he was the duly constituted
representative.

The insistence of appellee's counsel that the notices of
appeal must be filed with the clerk of the court in which the
judgment was rendered, and embraced in the tran-
script as a part of the record of the proceedings in
the lower court, is not tenable.   An appeal in a
criminal case is not required to be taken in term time, and
giving the required notices can not be said to be a necessary
proceeding in the lower court to be shown by its record.
They are not required to be filed with the clerk of that court,
but, together with the proof of service, are to be filed with
the clerk of the court to which the appeal is taken, and they
properly become a part of the record of the case in the higher
court.   Section 1962 Burns 1901, §1889 R. S. 1881, and
Acts 1905, p. 584, 657, §332, each provides that the appeal

shall stand for trial after filing the transcript and notices of the appeal. This provision clearly contemplates and requires that the notices are to be filed with the clerk of the appellate tribunal. In *Beggs* v. *State* (1890), 122 Ind. 54, this court held that giving the notice of appeal after the day on which the transcript was filed, but within the time allowed for taking the appeal, while not a literal compliance with the statute, was, nevertheless, a substantial conformance thereto. We conclude that the appeal notices herein are substantially sufficient.

The assignment of errors is signed by the proper prosecuting attorney. It is insisted, however, by appellee that this official was not, under the law, authorized to sub-
3. scribe the assignment. It is argued that his powers are confined to the circuit court or courts of his judicial circuit, and that the Attorney-General is the only officer who is empowered to subscribe the assignment of errors in a cause in which the State of Indiana has appealed to the Supreme or Appellate Court. The reason assigned for the contention is that when an appeal in a criminal case reaches the Supreme Court, it is then under the sole control of the Attorney-General. It is true that in a criminal cause, when an appeal taken either by the State or the defendant has once reached the appellate tribunal, then, so far as the State is concerned, the case passes under the control of the Attorney-General, and by virtue of the statute he becomes the exclusive representative of the State therein. *State, ex rel.,* v. *Jamison* (1895), 142 Ind. 679, and cases there cited; *State* v. *Sopher* (1901), 157 Ind. 360.

An assignment of errors, however, is one of the essential steps in taking or perfecting an appeal to this court, hence, the appeal can not be said to have been fully taken
4. or to have reached the appellate tribunal until all of the essential steps required to perfect it have been taken. Elliott, App. Proc., §284.

The appeal, therefore, in this case had not, in a legal sense, fully reached the Supreme Court until the assignment of errors therein had been made and filed. That the prosecuting attorney under the law is impliedly, if not expressly, empowered to do all and singular that which is necessary to take and perfect an appeal on the part of the State either to the Supreme or Appellate Court can not be successfully controverted. In fact, his authority to subscribe the assignment of errors in appeals taken by the State was fully affirmed and sustained by this court in *State v. Sopher, supra.* In this latter case we held—and properly so—that it would suffice if either the prosecuting attorney or the Attorney-General subscribed the assignment of errors. It is argued, however, by counsel for appellee, that because the appeal in the latter case was taken under §1915 Burns 1901, §1846 R. S. 1881, upon a question reserved by the State under the third subdivision of §1955 Burns 1901, §1882 R. S. 1881, the decision therein is not applicable to a case where the appeal is taken from a judgment quashing and setting aside an indictment. This distinction is without force, for the power of the prosecuting attorney to sign his name to the assignment of errors, and to take all other essential steps to perfect an appeal on the part of the State, does not depend upon any particular subdivision of the above section, but in reason it must be held that such authority on his part extends to all appeals authorized to be taken by the State in a criminal prosecution. *State v. Sopher, supra.*

In respect to the fourth ground assigned for dismissing the appeal, it may be asserted that an examination of the transcript discloses that counsel for appellant have endeavored to comply with the rule of this court in regard to marginal notes; and while the latter are not as full as they might be, nevertheless, in consideration of the fact that the record herein is short, they serve the purpose intended within the meaning of the rule, and, under

the circumstances, afford appellee no grounds for dismissing the appeal. It follows that none of the grounds assigned for dismissing this appeal are sustained, and the motion is, therefore, overruled.

The next question presented by the State is: Did the court err in holding appellee's plea in abatement sufficient on demurrer? His counsel contend that, under the facts therein alleged, it is disclosed that the grand jury which returned the indictment against him was selected by jury commissioners, one of whom, under the provisions of the statute, was ineligible and disqualified to serve by reason of his interest in suits pending in the Floyd Circuit Court against the ·corporation mentioned, such interest arising out of the fact that he was a stockholder thereof, and a member of its directory and so continued to be at the time of the selection of the grand jury. The determination of this question requires an examination of the statute relative to the appointment and duties of jury commissioners.

Section 1449 Burns 1901, Acts 1899, p. 428, empowers the circuit court during the last term beginning in each calendar year to appoint for the ensuing year two persons as jury commissioners, who shall be freeholders and voters of the county of opposite politics to each other, one of whom shall be a resident of the town or city in which the court is held. They are by the provisions of the above section required to take the oath of office therein prescribed, that they will honestly perform the duties of jury commissioners during their terms of office. Section 1456 Burns 1901, §1391 R. S. 1881, provides: "No person shall be appointed a jury commissioner who at the time is a party to or interested in a cause pending in the county which may be tried by a jury to be drawn during the calendar year next succeeding his appointment." The section further provides that any jury commissioner who shall fail to accept said office shall be deemed guilty of contempt of court, etc.

Section 1450 Burns 1901, §1386 R. S. 1881, provides that the jury commissioners immediately after their appointment shall, from the names of the legal voters, etc., on the tax duplicate of the county for the current year, proceed to select, and deposit in a box furnished for that purpose, the names, written on separate slips of paper, etc., of twice as many persons as will be required by law for grand and petit jurors in the courts of the county for all of the terms of such courts to commence within the ensuing calendar year.    Section 1452 Burns 1901, §1387 R. S. 1881, provides that within a period of not more than one week preceding the commencement of the term of any criminal court, or circuit court in the event there is no criminal court, the clerk of the court shall, after well shaking the jury box, open it and draw therefrom six names of competent persons, who shall be summoned as the grand jury for such ensuing term.    A similar provision is made for drawing the names of persons who are to serve as petit jurors.

Section 1457 Burns 1901, §1392 R. S. 1881, among other things, fixes a per diem to be paid said commissioners as a compensation for their services.

There are no facts alleged in the plea in abatement to show that the grand jurors who returned the indictment in question did not possess the qualifications required by law, or that the method of selecting and drawing them was not in strict compliance with the law relative thereto, save and except the point made as to the incompetency of the jury commissioner herein in question.    The sole proposition presented and argued by appellee is that by virtue of the fact that Dunbar, the commissioner, was at the time of his appointment a stockholder of the corporation against whom actions were then pending in the Floyd Circuit Court, he was thereby wholly disqualified and incompetent, and that under the express provisions of the statute the judge of the Floyd Circuit Court was forbidden to appoint him, and that

consequently his act in assisting to select the grand jury in question was illegal, and rendered the indictment returned by that body subject to a motion to quash.

It will be noted that the selection of the grand jurors in this case was an official act or function to be performed by the jury commissioners, and that this duty had been fully discharged by the two jury commissioners prior to the beginning of the term of court at which the grand jury that returned the indictment was impaneled. Under the facts in this case, by reason of the conclusion which we have reached, we pass, without deciding, the question whether Dunbar, by reason of his being a stockholder of the corporation against which the suits were pending in the Floyd Circuit Court, was, within the meaning of the statute, thereby rendered ineligible or disqualified for the appointment of jury commissioner. It is not shown that the judge of the court in appointing the commissioner in question knowingly intended to disregard the provisions of the statute, for it does not appear that he, at the time the appointment was made, was apprised of or aware of Mr. Dunbar's relations to the corporation in controversy; and, under the circumstances, we must assume that in appointing him the judge of the Floyd Circuit Court acted in good faith, believing that under the law he was qualified and competent. The appointment, as it appears, was made by the court or judge invested by law with the authority or power of appointing jury commissioners. These officials, after their appointment, as we may assume, duly qualified thereunder by taking the oath prescribed, and as shown entered upon the performance of the duties of the office by selecting jurors for the ensuing calendar year; and the right of Mr. Dunbar to discharge this official duty apparently was recognized and acquiesced in by the court and its officials and by the public in general. The authority of this commissioner to act, so far as it appears, was first challenged by appellee under his plea in abatement. Although his appointment to the office,

as appellee contends, may have been wrongful or illegal, he, at least in selecting the names of jurors, was acting under a color of right or authority, and was not a mere intruder or usurper of the office in question; and, under the facts shown, he was at least an officer *de facto,* if not *de jure,* in the performance of the duties of a public office, and as such his official acts in selecting the jurors in question must be considered and deemed to be as valid and binding—so far, at least, as third parties and the public are concerned—as though he had been a *de jure* commissioner; and, under the circumstances, his title to the office and his right to discharge the duties thereof can not, as appellee seeks to do, be collaterally called in question. This rule is one which is founded upon public policy, and is well and universally affirmed.    See the following authorities: *Gumberts* v. *Adams Express Co.* (1867), 28 Ind. 181; *Smurr* v. *State* (1886), 105 Ind. 125; *Parker* v. *State, ex rel.* (1892), 133 Ind. 178, 18 L. R. A. 567; *State, ex rel.,* v. *Crowe* (1898), 150 Ind. 455, and cases cited; *Spegal* v. *Krag-Reynolds Co.* (1898), 21 Ind. App. 205; *State* v. *Lewis* (1890), 107 N. C. 967, 12 S. E. 457, 13 S. E. 247, 11 L. R. A. 105; *State, ex rel.,* v. *Taylor* (1891), 108 N. C. 196, 12 S. E. 1005, 12 L. R. A. 202, 23 Am. St. 51; *State* v. *Carroll* (1871), 38 Conn. 449, 9 Am. Rep. 409; *Sheehan's Case* (1877), 122 Mass. 445, 23 Am. Rep. 374; *McGregor* v. *Balch* (1842), 14 Vt. 428, 39 Am. Dec. 231; *Hamlin* v. *Kassafer* (1887), 15 Ore. 456, 15 Pac. 778, 3 Am. St. 176; *Leeds* v. *Atlantic City* (1890), 52 N. J. L. 332, 19 Atl. 780, 8 L. R. A. 697; Mechem, Pub. Officers, §§317-319, 328, 330; Throop, Pub. Officers, §§633, 636, 651.

The contention that the appointment of Dunbar was illegal and wrongful, and therefore absolutely void, and that, under the circumstances, he can not be regarded as an officer *de facto* can not be sustained.    As previously said, it is not shown that in making the appointment there was any

palpable disregard of the law, and, for aught appearing to the contrary, the appointment may be said to have been made in good faith, possibly under a mistake of facts or misconception of the law.    It must be conceded, however, that at least there was a formal appointment by the court empowered to make it and that the commissioner in question was duly inducted into the office thereunder, and therefore he can not be considered as a mere usurper, or as having taken possession of the office without any authority whatever.    The rule is well settled that the illegality of the election or appointment of one to public office by virtue of which election or appointment he gains entrance to the office and takes upon himself the performance of its duties, does not prevent the office in question from being filled *de facto,* and the official acts of such an incumbent from being shielded against a collateral attack.    Mechem, Pub. Officers, §§319-321; Throop, Pub. Officers, §§633, 636, 651.    See, also, other authorities above cited.

It is further asserted that a jury commissioner under the law of this State is not an officer, and that therefore his acts are not protected by the *de facto* doctrine.    It will

9.  be observed that by the provisions of §1449, *supra,* jury commissioners are required to take an official oath that they will honestly perform their duties during "the term of office."    Section 1456, *supra,* declares that any person appointed a jury commissioner who shall "fail to take upon himself said office," etc., shall be deemed guilty of contempt of court, etc.    These provisions, and others of the statute in question, conclusively show that the legislature in the enactment thereof intended to and did create a public office.    The *de facto* rule extends to and embraces officers of all grades, either executive, ministerial or judicial, and applies to inferior officers in like manner as to those who are superior.    Mechem, Pub. Officers, §319.

It is not charged that there was any fraud or corruption in selecting the grand jury in controversy, but the plea in

abatement proceeds entirely upon the theory that the names of the persons composing the grand jury were selected by commissioners, one of whom was incompetent. To repeat, however, what has been previously said, the facts disclose that if he was not a *de jure* commissioner, he was, at least, one *de facto,* whose acts, under the rule asserted, must be protected against a collateral attack. Certainly, under the circumstances, it can not be said that his act in assisting to select the grand jurors in question operated to prejudice any of the substantial rights of appellee. As shown, not only had his act in assisting to select the grand jurors been fully performed before his authority in the premises was called in question; but the grand jury had been impaneled, and had actually returned the indictment against the appellee.

In respect to the question of time when the objections to the jury should have been interposed by appellee, it may be said in this case that, inasmuch as Dunbar, in the eye of the law must be recognized at least as a *de facto* commissioner, who before the impanelment of the grand jury had already fully performed the official act in controversy, it would follow, under the circumstances, that appellee's challenge to the array, had it been made on the grounds set up in the plea in abatement, would have been no more available than are the objections to the indictment as presented by said plea.

Were we, under the facts of this case, to sustain the contention of appellee, then the effect of our holding would be to affirm the right of any party in a cause pending in the Floyd Circuit Court, triable by a jury during the calendar year for which the commissioner in question had acted in selecting the names of persons to serve as petit jurors, to challenge for the same reason the right or authority of the jurors to try such cause. It is manifest that if the law required or warranted such a holding it would be justly subject to ridicule. Formerly under the law of this State

the boards of commissioners of the counties selected the grand jurors.   Were this law still in force, and had the grand jury in dispute been selected by the board of commissioners of Floyd county, appellee might, with equal propriety and right, have assailed the indictment, because the members of said board were not eligible or legally qualified at the time of their election, or that their election for some reason was illegal.   If appellee could successfully in this case assail the title or right of the commissioner in controversy to the office in question, then his right must be affirmed to call in question in like manner the title or right of the clerk who, under the law, drew from the jury box the names of the grand jurors.   If the right for which appellee contends could be upheld then there would virtually be no limit to the rule, and courts would be constantly required to investigate or inquire into the infirmity of the titles of their officers, upon a collateral attack like the one in the case at bar.

It follows, and we so adjudge, that the court erred in overruling the demurrer to the plea in abatement, for which error the judgment is reversed, and the cause remanded, with instructions to the lower court to sustain the demurrer, and for further proceedings.