BROWNLEE ET AL. *v.* DUGUID ET AL.

[No. 14,075.   Filed October 29, 1931.]

*Vesey, Shoaff & Hoffman* and *Wood & Wood,* for appellants.

*Howard W. Mountz* and *Dudley W. Gleason,* for appellees.

KIME, J.—This is a proceeding under §§11247 to 11255, inclusive, Burns 1926, being Acts 1905 p. 219, as amended by Acts 1913 p. 260, for the incorporation of certain surveyed territory bordering on Clear Lake in Steuben County, Indiana.

Following a skirmish which has no bearing here, the petition was filed and an election was ordered and held. The statement of the inspectors showed a majority

against incorporation. A petition for recanvass and recount was denied by the board of commissioners, and, upon appeal to the circuit court, a judgment was rendered denying such relief. A motion for a new trial, assigning that the decision of the court is not sustained by sufficient evidence and that the decision of the court is contrary to law, being overruled, this appeal followed, assigning that action as error.

It appears that there were 106 ballots voted and counted. Seventeen were cast in favor of the incorporation. Eighty-nine were cast against the incorporation, of which appellants concede that seven were cast by qualified voters resident in the territory.

Section 11251 Burns 1926 provides that the question of incorporation shall be determined at a meeting of the "qualified voters, resident in the territory."

The Constitution, Art. 2, §2, as amended, provides what a qualified voter shall be.

This presents the only question to be decided by this appeal, namely, what is a "resident in the territory."

"Resident" has been defined by many cases with various interpretations. An extensive compilation of such cases here would serve no useful purpose. We have in Indiana the cases of *Pedigo* v. *Grimes* (1887), 113 Ind. 148, 13 N. E. 700, and *Brittenham v. Robinson* (1897), 18 Ind. App. 502, 48 N. E. 616, which have set out the salient features; namely bodily residence in a place coupled with an intention to make such place a home, which establishes a domicile or residence. The intention must be found in the conduct and statements, if any, prior to the time it is questioned.

In the case of *Matter of Rooney* (1916), 172 App. Div. 274, 159 N. Y. Supp. 132, the court said: "It is a significant fact that in all the investigation of this subject, whether in the courts or out of them, there is an implied understanding that residence depends not upon

a mere exercise of the will, but upon the purpose of the individual as evidenced by his own conduct. The expression is often found in judicial utterances that the question of residence depends upon the intent of the individual, but the context is usually found to contain the limitation that the intent is not a mere arbitrary declaration on the part of the individual, but is to be gathered from his conduct as evidenced in his daily life; and so when these respondents were put upon the stand they were questioned as to some of the physical facts, showing a recognition of the general proposition. But mere isolated facts cannot be relied upon wholly to determine the question of when a man is or is not a resident of a particular place. The fact that he owns the premises from which he registers is one fact to be considered, but the more important fact is his present relation to the premises. If he originally lived in the premises, if he had a residence there, the presumption of law is that he continues to reside there until he has established a residence elsewhere, and the fact of his removal is one of the things to be taken into consideration, but he may change his physical abode temporarily for some particular reason, and so the question comes up what was his intention in removing from the original residence. Did he go away for a limited purpose, intending to return, not merely to the premises, but to the residence—to continue his relation as a resident of the community—or was it with the purpose of making a new home; of taking up a new residence? . . .

"A residence for voting purposes is not a mere state of mind, and cannot be established solely by proof of intentions. The intention of the party is a material consideration in determining his place of residence. The intention we are interested in is not where he intends to vote, but where he intends to live as his permanent home. The right to vote may follow his intention, but

the mere intention to vote at a place, standing alone, has no particular bearing upon his place of residence. Undoubtedly, a man may temporarily leave his home for a longer or shorter time, and maintain his household elsewhere, for purposes of business or pleasure, and so long as he considers his absence as merely temporary, and he has a *bona fide* intent to return to his former home, he does not lose his residence there. The establishment of a permanent home in one locality, and an intention to vote in another locality, does not make a man a resident of the latter place. His right to vote follows his actual residence, unless the actual residence is merely for a temporary purpose. The intent to permanently live in one place is entirely inconsistent with the right to vote in another place."

The place where a person lives is *prima facie* taken to be his residence, unless facts can be established to the contrary. *Tracy* v. *Tracy* (1901), 62 N. J. Eq. 807, 48 Atl. 533.

The elector's residence is the place where he makes his permanent or true home. *Fry's Election Case* (1872), 71 Pa. 302, 10 Am. Rep. 698.

The term "residence" has been judicially defined as the abode or dwelling place, as distinguished from a mere temporary locality of existence. Residence, and even domicile, is a quality which endures, when once acquired, until changed *animo et facto*. *In re Hughes' Infants* (1867), 1 Tuck. (N. Y.) 38.

Although intention is an important element of the status of an elector, his own statement as to any such intent cannot, of itself, be controlling in respect to his residence for voting purposes. *Seibold* v. *Wahl* (1916), 164 Wis. 82, 159 N. W. 546, Ann. Cas. 1917C 400.

Although this court believes in and is in harmony with the almost universal rule that intention is an im-

portant element in determining the status of an elector as regards his residence, we are of the opinion that his own statement of a mental resolution as to any such intent cannot of itself be controlling, but must be taken in connection with his acts and conduct. The mere fact that an elector is willing to swear and does swear that he considers a certain place his home is not sufficient to entitle him to vote, if the facts and circumstances show that his home and domicile are elsewhere. It follows, therefore, that intent is not a mere arbitrary or whimsical declaration on the part of the individual, but must be gathered from his conduct as evidenced in his daily life, and other acts and circumstances which may have some bearing upon his mode or method of living. We realize that it is not the function of an appellate tribunal to inquire into the wisdom of a decision of a trial court, but, in the instant case, the *animus revertendi* was manifest and obvious, as many of those who were permitted to vote, when questioned regarding their residence, stated that they had or maintained a home outside the area to be incorporated, but insisted that they had established their residence at their cottage on the lake, regardless of the fact that many of their cottages were of the ordinary lake-front type, some even without a chimney, while their homes were substantially built houses containing modern conveniences and improvements.

For us to determine who were qualified voters resident in the territory has necessitated the application of the definition to all of the testimony of 106 witnesses, not for the purpose of determining the weight or sufficiency of any evidence, but for the sole and only purpose of determining whether or not, as a matter of law, from all the evidence, each person presenting himself to the board was "a qualified voter resident in the territory."

Following the law as above set out, we find, as a

matter of law, from uncontradicted evidence, that there were 16 votes cast for the incorporation and 14 against, and 76 votes cast which should not have been counted. It follows that the decision of the trial court was contrary to law.

The judgment of the Steuben Circuit Court is hereby reversed, with instructions to enter a judgment in favor of the petitioners, and directing the board of county commissioners to enter an order declaring the town of Clear Lake to be incorporated and for the appointment of special inspectors from the qualified voters resident within the territory to complete the duties outlined by statute.

Wood, J., not participating.