Wesley Robert BAGNELL, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 2–877A301.

Court of Appeals of Indiana, Fourth District.

Dec. 30, 1980.

Thomas J. Jeffers, Clark & Clark, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Wesley T. Wilson, Deputy Atty. Gen., Indianapolis, for appellee.

MILLER, Judge.

On March 1, 1976, a Tippecanoe County Grand Jury filed an indictment charging Wesley Bagnell with supplying false information [1] 1) on an "Application for Transfer of a Three–way Permit," and 2) on a "Questionnaire Concerning Manager or Agent" both required to be furnished to the Alco-

---

1. The applicable statute, IC 7.1–5–6–4 reads as follows:

"It is unlawful for a person to falsify, or cause to be falsified, an entry, statement, account, recital or computation, or an application for a permit, or an instrument, or a paper required to be filed in connection with the application, or in connection with the revocation, or proposed revocation, or a per-

mit. It is unlawful, also, for a person to enter, or cause to be entered, a false entry, statement, account, recital, computation, or representation of a fact in a book, document, account, order, paper, or statement required to be kept or filed, or made or furnished to the Commission under the provisions of this title or a rule or regulation of the Commission."

holic Beverage Commission pursuant to IC 7.1–3–1–4. On these forms Bagnell responded that he had never been convicted of any offense when he had allegedly plead guilty to a Dyer Act violation (transporting stolen vehicles across state lines) in 1947, when he was only nineteen years old. On January 27, 1977, he was found guilty by a jury. He was sentenced on each count of the two counts to imprisonment for one to three years and fined $500 on the second count. The imprisonment portion was initially suspended, but later revoked.

Bagnell raises numerous issues on appeal including challenging 1) the jurisdiction of the special prosecutor 2) the selection of the grand jury and 3) prosecutorial misconduct. We reverse the trial court on the third issue; but will discuss the first two as they affect the authority of the court to retry the case.

## I. SPECIAL PROSECUTOR

Bagnell contends the charging indictment was defective in that it was not signed by the elected prosecutor of Tippecanoe County. He contends the special prosecutor, George L. Hanna, who signed his indictment, exceeded the scope of his special prosecutorial powers.

■ The authority of this special prosecutor was at issue in *King v. State*, (1979) Ind.App., 397 N.E.2d 1260. There this Court held Hanna was at least acting as a de facto public official and as such his actions could not be collaterally attacked:

"King correctly asserts in his brief that criminal prosecutions cannot be instituted by private individuals. However, this case was not instituted by a private individual. Rather it was initiated by a special prosecutor who at minimum, was a de facto public official.

**2.** IC 33–4–5–1 in part reads:
"The Circuit Court shall, during the month of November, appoint for the next calendar year two [2] persons, at least one [1] of whom shall be a resident of the town or city in which the court shall be held, as jury commissioners, who shall be freeholders and vot-

The acts of a de facto public official may not be collaterally attacked. This proposition is so deeply rooted that in 1892 the Indiana Supreme Court stated:

The rule that the acts of an officer *de facto*, performed before ouster, are, as to the public, as valid as the acts of an officer *de jure*, is too familiar to the profession to need the citation of authority. The public is not to suffer because those discharging the functions of an officer may have a defective title, or no title at all. *Parker v. State ex rel. Powell* (1892), 133 Ind. 178, 200, 32 N.E. 836, 843.

This applies to prosecutor[s] as it does to judges, and other public officials. Therefore an indictment signed by a de facto special prosecutor is not subject to *collateral* attack by a motion to dismiss.

An indictment signed by a *de facto* prosecuting attorney will not be held void when attacked by accused on the ground of his want of authority. 42 C.J.S. Indictments & Informations § 57 at 912.

The validity of acts of a public officer may be challenged only by a direct challenge against the individual who purports to hold the office. Such a procedure was not followed in this case.

The indictment not being subject to the type of attack mounted against it, the trial court's overruling of the motion to dismiss was proper." (Citations omitted.)

*King v. State, supra* at 1267–78.

## II. GRAND JURY SELECTION

1. Bagnell contends the jury commissioners who selected the names from which the grand jury was to be drawn lacked authority because their appointments and oaths do not appear in the court's order book.[2]

ers of the county, well known to be of opposite politics, and of good character for intelligence, morality and integrity, and cause them to appear and take an oath or affirmation in open court, to be entered of record in the order–book of the court."

■ The alleged defect does not present us with reversible error, because the rule of de facto officers applies also to jury commissioners. *Steinbarger v. State,* (1938) 214 Ind. 36, 14 N.E.2d 533; *Randolph v. State,* (1928) 200 Ind. 210, 162 N.E. 656; *State v. Sutherlin,* (1905) 165 Ind. 339, 75 N.E. 642. As de facto public officials their authority cannot be collaterally attacked by a motion to dismiss. Their authority "may be challenged only by a direct challenge against the individual who purports to hold the office." *King v. State, supra* at 1268.

2. Bagnell points out that the clerk failed to certify that the names drawn and listed were called in the same order that they were drawn from the box as is required by IC 33–4–5–2.[3]

He also asserts the jurors were not, in fact, called in the same order. This issue was discussed by our Supreme Court in *Phillips v. State,* (1978) Ind., 376 N.E.2d 1143, 1145.

> "The whole object of the jury selection procedure provided for in Ind. Code § 33–15–22–1 is to assure that jurors are chosen on a random basis, in order to avoid even the possibility of bias. The requirement that jurors be called to serve in the same order as they are originally picked by the County Clerk is to prevent the process of selection by random from being subverted by the placing of individuals or groups of individuals at the end of the list, where they might not be called for service. Here, it is apparent that the members of the array were out of their original order by reason of Judge Jacobs' policy of allowing members to serve according to their convenience. Defendant made no allegation, and there is no indication appearing in the record, that the selection process employed involved the intentional arrangement or rearrangement of prospective jurors in any particular order, and it does not appear that the defendant could have suffered any impairment of a substantial right."

■ Here we are not given any reason for the deviation from the prescribed sequence. However, neither are we shown any probability of harm to Bagnell's substantial rights. We must therefore hold this does not present a valid issue for reversal. *Hopkins v. State,* (1975) 163 Ind.App. 276, 323 N.E.2d 232.

■ 3. Bagnell contends that even though the list of names from which the grand jury was selected was compiled from the voter's registration records the list of prospective grand jurors contained the name of an unregistered voter. The record does no more than set forth this allegation. It is the appellant's duty to present us with a complete record, *Dunbar v. State,* (1974) 160 Ind.App. 191, 311 N.E.2d 447, without such we are unable to review the alleged error. In addition we fail to see how any prejudice arose since the person in question was not sworn onto the jury.

■ 4. Bagnell asserts as error the fact that the sheriff told a seventy–eight year old woman she did not have to serve on the grand jury because of her age if she did not want to and filed a return stating he could not find the woman. Clearly the woman was exempt from duty, if she desired, since she was over sixty years of age. IC 35–1–15–5 reads in part:

> "A grand juror may be excused from attending ... because he is over sixty (60) years of age, and desires to be excused for such reason."

Thus Bagnell could have suffered no prejudice by her excusable absence.

With regard to the foregoing alleged improprieties we note that in order to prevail on such issues Bagnell must show either actual prejudice or a lack of substantial compliance with the statutory procedures. *Cross v. State,* (1979) Ind., 397 N.E.2d 265. *Owen v. State,* (1979) Ind., 396 N.E.2d 376. He has shown neither.

---

**3.** IC 33–4–5–2 in part reads:

"Provided, that the order of names as listed in the panel and as called for service shall be the same order as that in which the names are drawn from the box ... and he [the clerk] shall attach his certificate of the fact."

## III. PROSECUTORIAL MISCONDUCT

■ Bagnell contends the prosecutor attempted to prejudice him by continually "posing questions . . . designed and calculated to form in the minds of the jurors a configuration of an habitual criminal." When presented with such an allegation this Court will reverse only when the misconduct, under all the circumstances, placed the defendant in a position of grave peril to which he should not have been subjected. *Maldonado v. State*, (1976) 265 Ind. 492, 355 N.E.2d 843; *White v. State*, (1971) 257 Ind. 64, 272 N.E.2d 312; *Washington v. State*, (1979) Ind., 390 N.E.2d 983, 987–88.

The record shows the prosecutor, did indeed, on an excessive number of occasions pose questions which suggested that Bagnell had been arrested numerous times, had engaged in previous criminal conduct (for which he was neither arrested nor convicted) and had "underworld connections." This type of questioning persisted even after Bagnell's objections were sustained and the court, itself, commented on the possibility of a mistrial.

Our Supreme Court recently found prejudice resulting from analogous prosecutorial misconduct in *Dailey v. State*, (1980) Ind., 406 N.E.2d 1172. We quote in its entirety the discussion of that issue:

"Defendant's confession was suppressed, at a pre–trial hearing, because of a violation of his constitutional rights. Defendant contends that the State made repeated efforts to inform the jury that he had confessed to the police.

The record reflects that, on at least eight occasions, the prosecutor asked State witnesses whether or not Defendant had given a statement to the police, and on two occasions, the prosecutor asked the witness to relate what was said. These ten instances resulted in nine objections, six of which were sustained. Three of these rulings were accompanied by admonishments to the jury. In over-

ruling the first three of such objections, the trial court stated that the police officers could testify as to Defendant's demeanor during the interrogation by the police officers but not as to the contents of the conversation. Upon Defendant's fourth objection, however, the trial court modified its earlier ruling and held that only evidence of Defendant's demeanor prior to the interrogation was admissible, and he sustained the next six objections in like instances. Two such instances included revelations of the contents of the conversations.

The State argues that it was entitled to introduce evidence of Defendant's demeanor while in custody, to rebut his insanity defense. However, by making repeated attempts to bring before the jury that which had already been held to be inadmissible in evidence, the State placed Defendant in a position of 'grave peril' to which he should not have been subjected. *Cf. Rohlfing v. State*, (1951) 230 Ind. 236, 102 N.E.2d 199; *White v. State*, (1971) 257 Ind. 64, 272 N.E.2d 312.

We are not persuaded that such errors were harmless in light of overwhelming evidence of guilt. Although there is no doubt that Defendant killed the decedent in a violent manner, as previously stated, his state of mind at the time was a matter upon which reasonable minds could differ."

*Id.* at 1175–76.

In the case at bar, although not in direct contravention of pre–trial orders, the prosecutor repeatedly and with obvious deliberation posed questions which could have no effect other than to prejudice the jury. Numerous examples of this misconduct are revealed in the record.

■ First, during Bagnell's testimony, after the Dyer Act violation had been established, the prosecutor asked such questions[4] as:

**4.** We note, although not raised by Bagnell, these questions by the prosecutor constitute a separate form of misconduct if there was no reasonable basis for them. In *Haynes v. State*,

(1980) Ind.App., 411 N.E.2d 659, this Court stated:

"A prosecutor must have a reasonable basis for asking a question designed to impeach

1. "Well how many times have you participated in the stealing of a car?"

2. "How many times have you been charged with a buyer [sic, Dyer] act offense?"

3. "Ever been in jail at any other time?"

4. "How many times have you been fingerprinted in your life, Mr. Bagnell?"

He posed questions to State's rebuttal witness, Walter Valentine, F.B.I. agent, concerning an investigation of the theft of traveler's checks which Bagnell had purchased and reported stolen. After establishing that Agent Valentine had narrowed his investigation to one suspect he asked Valentine if he had advised Bagnell of his constitutional rights, from which one could infer that Bagnell was such suspect.

The obvious intent of the prosecutor to prejudice the jury against Bagnell was further exemplified by the questions posed to several police witnesses called by the State: To William Nave, Detective Sergeant, Indiana State Police:

"Q. Are you aware of him having members of the criminal element in his home at the time of the [political] campaign?

A. I've been told that there has been.

.   .   .   .   .

Q. As a result of your investigative work, are you aware of Mr. Bagnell's association with members of the criminal element?

A. Yes, sir."

To Oscar Gates, Lieutenant, Indiana State Police:

"Q. Do you know if any of those people ['members of the criminal element'] know Mr. Bagnell?

A. Yes, sir, I know of some of them that do.

Q. And do you know if any of them have associated with Mr. Bagnell?

A. Yes, Sir."

A character witness for Bagnell who testified to Bagnell's reputation for truth and veracity was asked on cross–examination if he had "ever participated in any investigation of Mr. Bagnell concerning any criminal activity." (The answer "no" was interjected before Bagnell's objection to the question's impropriety, but the objection was overruled.) Another character witness, an officer at First Federal Savings & Loan at Delphi, Indiana, was asked if he checked with police officers about investigations concerning Bagnell while doing a credit investigation.

The questions the prosecutor posed to Bagnell's wife further displayed his malevolent intent. The questions concerned the high cost of their home ($300,000) and its substantial mortgage payments. He challenged their ability to make the monthly mortgage payments solely from the profits of the tavern business, seeking to establish an unrevealed (criminal) source of income.

a witness on collateral matters. *Marsh v. State* (1979), Ind.App., 387 N.E.2d 1346, 1348, *rev'd on other grounds*, Ind., 393 N.E.2d 757. Improper matters cannot be introduced into the awareness of the trier of fact by formulating a question that is pregnant with an unsubstantial assertion of fact. [fn. 7. The Code of Professional Responsibility prohibits the asking of a question for which an attorney does not have a reasonable basis. Disciplinary Rule DR 7–106(C)(2).] *Harris v. State* (1979), Ind., 394 N.E.2d 97, 99. Our Supreme Court stated: 'An attorney should not contrive a cross–examination based on fictitious assumptions when to do so would only confuse the fact finder and impede the search for truth. . . .' *Lowe v. State* (1973), 260 Ind. 610, 613, 298 N.E.2d 421, 423. If a witness denies a cross–

examination question designed to impeach on collateral matters, the prosecutor must be prepared to dispute the denial of the question. *Marsh, supra,* at 1348. Thus, as Justice Jackson once stated, a prosecutor cannot 'ask a groundless question to waft an unwarranted inuendo (*sic*) into the jury box.' *Michelson v. United States* (1948), 335 U.S. 469, 481, 69 S.Ct. 213, 221, 93 L.Ed. 168, 176."
The record does not disclose any representation to the trial court that the prosecutor had a reasonable basis for believing Bagnell had been arrested and fingerprinted on occasions other than the one specified in the indictment. Bagnell acknowledged only a single Dyer Act conviction. He was not required to answer the last two questions. All the questions implied numerous encounters with the law, appear to be groundless and wilfully inserted for their obvious prejudicial impact.

We must conclude that none of this evidence was admissible. The rule is established in this jurisdiction that prior bad acts of a defendant which did not result in a conviction are inadmissible except to show intent, purpose, identification or a common scheme or plan.

> "It is well settled law that evidence of criminal activities apart from the question of guilt if the evidence is irrelevant or *produced merely to show the defendant's unsavory character* or tendency to commit certain types of crimes. The evidence will also be excluded if it misleads the jury or serves no purpose other than to prejudice the defendant in the eyes of the jury." (Emphasis added.) (Citations omitted.)

*Manuel v. State*, (1977) 267 Ind. 436, 438, 370 N.E.2d 904, 905.

The prosecutor's persistence in posing the foregoing improper questions was misconduct, indicative of his attempt at placing evidence of Bagnell's "underworld" connections before the jury and grounds for a mistrial. *White v. State, supra; Harris v. State*, (1979) Ind., 396 N.E.2d 674.

As stated earlier, prosecutorial misconduct is reversible error if by reason of such the defendant is placed in a position of grave peril; *Dailey v. State, supra; Maldonado v. State, supra; White v. State, supra.* Here we believe his actions were more reprehensible than even those in *Dailey v. State, supra.* There appear to be more than fifteen separate instances in which he propounded improper questions which portrayed Bagnell as a member of the "underworld" who had been frequently arrested.

Bagnell was compelled to defend against an offense for which he was not charged and for which no charge exists, that of being a member of the criminal element. Such a circumstance was grossly unfair and a mockery of justice.

We conclude, as was stated in *Hadley v. State*, (1975) 165 Ind.App. 416, 421, 332 N.E.2d 269, 272 that:

> "Even if no one of these instances of misconduct was severe enough to compel reversal, their cumulative effect necessitates that Hadley be given a new trial. When an overzealous prosecutor injects numerous comments which serve no purpose but to unduly prejudice the jury, a duty devolves upon the trial judge to vigilantly protect the rights of the defendant. When this is not done, defendant is entitled to a new trial." (Citations omitted.)

Reversed and remanded.

YOUNG, P. J., and CHIPMAN, J. concur.