Evelyn HASSELBRING,
Defendant-Appellant,

v.

STATE of Indiana, Plaintiff-Appellee.

No. 1–581A184.

Court of Appeals of Indiana,
First District.

Nov. 9, 1982.

Philip E. Tracy, Veedersburg, for defendant-appellant.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

NEAL, Judge.

## STATEMENT OF THE CASE

Defendant-appellant Evelyn Hasselbring (Hasselbring) was convicted by a jury in the Fountain Circuit Court of voluntary manslaughter of her husband, Alton. She originally appealed raising the issues (1) of irregularities in the jury selection procedure in that one of the jury commissioners was not a resident of Fountain County, and (2) sufficiency of the evidence. We affirmed the conviction as to issue 2, and remanded the cause to the trial court for an evidentiary hearing on issue 1. Ind.App., 428 N.E.2d 1264. The record of that hearing, the trial court's findings of fact and conclusions of law, and amended briefs are now before us for decision.

We affirm.

## STATEMENT OF THE FACTS

By its findings of fact and conclusions of law, the trial court established the facts hereinafter recited, which are supported by the evidence at the hearing. The findings of fact are not challenged. On November 14, 1979, the Fountain Circuit Court duly appointed John W. Massey and Pearce R. McKinney as jury commissioners to serve for the calendar year 1980. Both men were qualified for the post, and they performed their duties through all times relevant to the trial of this case. Massey, a lifelong resident of Fountain County until October 12, 1977, had first been appointed as a jury commissioner in 1968. He had been reappointed in each succeeding year thereafter, and he served continuously through 1980. At all times relevant here Massey was a freeholder and registered voter in Fountain County. He paid taxes to Fountain County, purchased automobile license plates there, and operated an abstract and real estate office in Covington, the county seat.

However, on October 12, 1977, Massey moved with his family from Covington to a newly acquired home in Mound Township in Warren County, which location bore the address of R.R. 2, Covington. The new home was situated in the Covington Consolidated Community School Corporation. Upon moving, he retained some clothing and personal property in his office in Covington, and transferred his voting registration to that office address in Covington, Fountain County. After the move he voted in all elections in Fountain County, but never in Warren County. The trial court found that Massey intended to maintain his residence in Fountain County for voting purposes.

Hasselbring does not contend that the acts of the jury commissioners in drawing the jury panel which convicted her did not substantially conform to the requirements of Ind.Code 33–4–5–2, or that she was prejudiced in any way. She does not contend that the commissioners' acts were arbitrary or politically motivated, or that they were

selective in their drawing of jurors. She does not contend that jurors were deliberately excluded or selected from an improper source. No improper motive or knowledge is impugned to the appointing judge or Massey regarding the appointment.

## ISSUE

The only issue to be resolved in this appeal is the following:

I.  Whether the fact that Massey's family residence was outside Fountain County renders the jury selection improper and requires reversal.

## DISCUSSION AND DECISION

Ind.Code 33–4–5–1 establishes the qualifications of the two jury commissioners, as follows:

"The circuit court shall, during the month of November, appoint for the next calendar year two (2) persons, at least one (1) of whom shall be a resident of the town or city in which the court shall be held, as jury commissioners, who shall be freeholders and voters of the county, well known to be of opposite politics, and of good character for intelligence, morality and integrity...."

Hasselbring's argument consists of a review of the election statutes. Ind.Code 3–1–1–2, defines Freeholder as "a person who is a qualified voter in a precinct who owns real estate." Ind.Code 3–1–7–26 defines a qualified voter as "Every person who will be at least eighteen (18) years of age ... who is a citizen of the United States ... [and] will ... have resided in the precinct thirty (30) days...." Ind.Code 3–1–21–3 defines the rules to determine residence as

"* * *

(4) The place where a man's immediate family resides shall be considered his residence, but if it be a temporary establishment for his immediate family, or for transient purposes it shall not be so considered;

(5) If a man has his immediate family living in one place and he does business in another, the former shall be considered his residence, but when a man has taken up his abode at any place with the intention of remaining there, and his family refuses to reside with him, then such place shall be considered his residence; a married woman not living in a household with her husband may establish a separate voting residence from that of her husband;

* * * "

Hasselbring argues that residence does not depend upon a mere exercise of the will, but the individual's intention as evidenced by his conduct. It is not where a person intends to vote that is relevant, she continues, but where he intends to make his permanent home. *Brownlee v. Duguid,* (1931) 93 Ind.App. 266, 178 N.E. 174.

However our Supreme Court has held that the qualifications of a jury commissioner or other public officer cannot be collaterally attacked. *Bagnell v. State,* (1980) Ind.App., 413 N.E.2d 1072; *Steinbarger v. State,* (1938) 214 Ind. 36, 14 N.E.2d 533; *Randolph v. State,* (1928) 200 Ind. 210, 162 N.E. 656; and *State v. Sutherlin,* (1905) 165 Ind. 339, 75 N.E. 642. *See generally King v. State,* (1979) Ind.App., 397 N.E.2d 1260. In *Sutherlin* the court said:

"Although his appointment to the office, as appellee contends, may have been wrongful or illegal, he, at least in selecting the names of jurors, was acting under a color of right or authority, and was not a mere intruder or usurper of the office in question; and, under the facts shown, he was at least an officer *de facto,* if not *de jure,* in the performance of the duties of a public office, and as such his official acts in selecting the jurors in question must be considered and deemed to be as valid and binding—so far, at least, as third parties and the public are concerned—as though he had been a *de jure* commissioner; and, under the circumstances, his title to the office and his right to discharge the duties thereof can not, as appellee seeks to do, be collaterally called in question. This rule is one which is founded upon public policy, and is well and universally affirmed." ·

165 Ind. at 349–50, 75 N.E. 642. As in the case at bar, the *Sutherlin* court emphasized that there was no showing of a palpable disregard of the law. The appointment seemed to have been made in good faith, and the jury commissioner was properly inducted into office. In the case at bar there is no indication that Hasselbring was deprived of an impartial jury as a result of Massey's performance of his duties. In *Randolph* the court said

> "We hold that a jury commissioner, though not possessing all the legal qualifications of a commissioner, is, in the discharge of the duties of such office, a *de facto* officer and that the rules of law concerning *de facto* officers apply to the official acts of the jury commissioners."

200 Ind. at 220, 162 N.E. 656. The rule prohibiting collateral attack on acts of *de facto* officers has been applied to officers not possessing residential qualifications. *State v. Ray,* (1899) 153 Ind. 334, 54 N.E. 1067; *see State v. Duncan,* (1899) 153 Ind. 318, 54 N.E. 1066.

Another basis for affirming the decision here was stated in *Owen v. State,* (1979) Ind., 396 N.E.2d 376. There the statute governing appointment of jury commissioners for the St. Joseph County Integrated Court provided that four persons should be appointed jury commissioners. Only two were appointed. Over a strong dissent by Justice Hunter, the majority of the Supreme Court rejected the challenge to the conviction based on those facts stating:

> " '... The major requirement should be that the system of selection is not arbitrary ... and complete impartiality should be sought.' We have held that where there has been substantial compliance with the statutes directing selection and calling of jurors, minor irregularities in compliance with the statutes will not create prejudice to the defendant's substantial rights. *Shack [v. State,* 259 Ind. 450, 288 N.E.2d 155], *supra, Harrison v. State,* (1952) 231 Ind. 147, 106 N.E.2d 912;

*Rudd v. State,* (1952) 231 Ind. 105, 107 N.E.2d 168. Our statutory method for drawing juries was devised for the purpose of putting selection beyond suspicion of advantage or favoritism and making the selection, as nearly as possible, random. There is no showing here that the jury commissioners did not in all respects follow the dictates of the statutes in their selection of jurors. There was no showing of any systematic exclusion of any class of persons to serve on the jury. The mere fact that the actual jury did not contain percentages of certain groups to the satisfaction of this appellant does not indicate improper action by the commissioners. *Lake v. State,* (1971) 257 Ind. 264, 274 N.E.2d 249.

> Appellants substantial rights have not been prejudiced by this jury selection... The opinion of the Court of Appeals is vacated, and the trial court is affirmed on this issue."

396 N.E.2d 379. The dissent opined that "Having only half the required number of jury commissioners should not be termed substantial compliance." 396 N.E.2d 383. We read *Owen* to mean that technical defects in the appointment of jury commissioners will not be grounds for the disturbance of a conviction where there has otherwise been substantial compliance with the statutes directing the selection of jurors.

For the above reasons this cause is affirmed.

Affirmed.

RATLIFF, P.J., and ROBERTSON, J., concur.