ROHLFING *v.* STATE OF INDIANA.

[No. 28,806. Filed December 5, 1951. Rehearing denied January 15, 1952.]

*John R. Frazier,* of Rushville; *Hugh D. Wickens* and *Hubert E. Wickens,* both of Greensburg, for appellant.

*J. Emmett McManamon,* Attorney General; *William T. McClain* and *John Ready O'Connor,* Deputy Attor-

neys General; and *Ronald Beard,* Prosecuting Attorney, 69th Judicial Circuit, for appellee.

DRAPER, J.—The appellant was charged with receiving stolen goods, consisting of two radios, several shotguns, one rifle, one pistol and several fishing rods and reels. See Burns' 1942 Replacement, §10-3017. He was tried by jury, found guilty, and sentenced to the state prison. His motion for new trial was overruled, hence this appeal.

He was tried and found guilty of the same charge once before. That judgment was reversed by this court in 227 Ind. 619, 88 N. E. 2d 148, this court there holding that appellant's motion to quash the search warrant and suppress the evidence illegally obtained thereby was erroneously overruled prior to the first trial. On remand that motion was, pursuant to the mandate of this court, sustained by the trial court before this trial was begun.

In this state the trial court is required to instruct the jury, immediately it has been sworn to try the case, as to the issues for trial, the burden of proof, the credibility of witnesses and the manner of weighing the testimony to be received. Rule 1-7A. While the court was reading those instructions to the jury the prosecuting attorneys brought into the courtroom, before the jury, several rifles and shotguns, a pistol, two radios and some fishing tackle. With the exception of one gun, these were the articles which were recovered by virtue of the invalid search warrant. The appellant objected and moved for a mistrial. The court, by gesture, ordered the articles removed from the courtroom, and then admonished the jury not to consider what had occurred in reaching their verdict, and overruled appellant's objection and motion.

At the conclusion of the opening statement the

prosecuting attorneys again brought the articles into court and laid them on the table before the jury. Appellant made the same objection and motion which the court sustained; the attorneys were directed to withdraw the articles from the courtroom, and the jury was admonished to disregard them in making up their verdict.

Later, while a witness was being examined by counsel for the state, they again exhibited before the court and jury a 16 gauge automatic shotgun, which was one of the guns obtained by the execution of said search warrant. The jury was again told not to take into consideration the prosecuting attorneys' conduct in bringing this exhibit before the jury, and not to take it into consideration in making up its verdict.

The owner of the stolen goods was permitted to answer, in close sequence, that he had seen the stolen property after it was stolen from his store; he saw it at the police station; at that time the sheriff, the police captain, the patrolmen and the defendant were there, and the appellant then and there said he had bought the guns from Roy Merrit.

The search was made by virtue of an improper warrant. Any evidence obtained thereby, whether it be the articles involved in the commission of the crime or oral evidence of what was found or seen while such unlawful search was being conducted, is incompetent against the accused. *Flum* v. *State* (1923), 193 Ind. 585, 141 N. E. 353; *Callender* v. *State* (1923), 193 Ind. 91, 138 N. E. 817; *Dearing* v. *State* (1948), 226 Ind. 273, 79 N. E. 2d 535.

The articles were not offered in evidence. The state did not offer to exhibit them to the jury. It offered no direct evidence that the articles were ever in the possession of the defendant or that they were ever seen on or recovered from his premises.

But the mere fact that they were displayed before the jury, particularly when considered in connection with the nature and sequence of the testimony elicited from the witness Doerflinger, was obviously calculated to persuade the jury that such was the fact. The determined efforts of the attorneys for the state to keep these articles under the eye and in the mind of the jury, with consequent efforts on the part of the appellant to have them removed, would of itself tend to impress the jury that here was evidence damaging to the appellant. The prejudicial effect of displaying and referring to articles which are not and could not be introduced in evidence was noticed by this court in *Derry* v. *State* (1932), 204 Ind. 21, 182 N. E. 701. In that case the defendant was charged with driving a motor vehicle while under the influence of intoxicating liquor. During the trial certain containers of whiskey, a bottle of coloring fluid, a funnel, can, flashlight and a revolver and cartridges were exhibited to the jury and referred to by the witnesses. In the course of our opinion in that case we said: "The purpose of their exhibition before the jury is evident. No one, not even the State, will doubt their prejudicial influence on the jury, although they were not actually introduced in evidence. It is hardly reasonable to assume that the jurors would be able to dismiss from their minds the impressions formed from the day and a half observation of them. We know from common knowledge that such a display would tend to prejudice the jury, not only against the defendant himself but against any defense he might have to offer."

The articles in question were the very things the appellant was charged with having feloniously received, as the jury could see and certainly knew. The state's persistent effort to keep them on display; the appellant's no less determined effort to get them out of

sight; together with the implication of Doerflinger's testimony that the first time he saw the articles after they were stolen was when he saw them with the appellant at the police station, were clearly calculated to convince the jury that the appellant was "caught with the goods." We think the jury got the idea.

We do not suggest that such is the case, but if counsel for the state, knowing that these articles should not be displayed to the jury, made repeated efforts to lay them before the jury for the purpose of compelling the appellant to make repeated objections, that in itself would be prejudicial error. *Lynn* v. *State* (1929), 113 Court of Criminal Appeals of Texas 637, 21 S. W. 2d 1042.

It seems to us that the attorneys for the state must have misconceived the effect of the order quashing the search warrant and suppressing the evidence illegally obtained thereby. Such an order does not serve merely to throw up obstacles which make proof more difficult. It strikes at the right to prove. It concerns itself not with *methods,* but with *rights.* It absolutely prohibits the state and its officers from putting evidence illegally obtained before the jury by methods either direct or devious.

It is true the court did on several occasions admonish the jury to disregard the display of these articles in making up its verdict. Such action on the part of the court was necessary and quite proper. But the frequent repetition of such an admonition, made necessary by improper conduct on the part of the prosecuting attorney, may of itself operate to emphasize rather than minimize the damage, for it may actually tend to attach to such evidence a wholly unwarranted and undeserved significance regardless of the admonitions. On the record before us we are forced to conclude that the appellant's constitutional rights

were violated to his prejudice, and the judgment must therefore be reversed.

An officer who helped serve the search warrant returned a few hours later to arrest the appellant. He was permitted to testify, over appellant's objection, that while there for that purpose the appellant told him that he bought all of that stuff from Roy Merrit a week ago or longer; that Merrit came up on his porch about two o'clock in the morning and he bought it from him at that time. The officer further testified: "I said to him, 'What did you give him for it?' and he said 'Sixty-five dollars,' and I said 'Why were you in the act of removing the numbers from these guns?' and he said, 'I figured if I got them from Roy Merritt, I better get rid of them,'." Since the question of the admissibility of that evidence may arise on retrial, we think it best to dispose of it now.

The objection to this testimony, now urged, is that it was obtained by virtue of an illegal search of appellant's premises, and while said illegal search, or a continuation thereof, was in progress.

The problem presented is not a new one.[1] At common law evidence is admissible no matter how obtained, and many states still adhere to that rule. Others, including Indiana, hold that evidence illegally obtained may not be used against the accused. See cases first above cited.

But the fact that evidence illegally obtained by an unreasonable search or seizure may not be used against the accused does not necessarily mean that admissions made by him during the progress of, or following such a search, may not be used. The

---

[1] See rather exhaustive discussion of the subject by Mr. Justice Vinson in *Nueslein* v. *District of Columbia* (1940), 115 F. 2d 690.

constitutional provision protecting the citizen in his person, home, papers and effects against unreasonable search or seizure is different from the provision protecting him against being required to give evidence against himself.[2]

The admissions were not obtained through the search warrant. They could not be. They were obtained through voluntary answers to questions. The officer had the right to question the appellant on his premises or elsewhere, but the appellant was not required to answer. He could have remained wholly silent had he chosen to do so. On the other hand, he had a perfect right to speak against his own interests if he freely and voluntarily chose to do so. Burns' 1942 Replacement, §9-1607 provides that a confession of a defendant made under inducement with all of the circumstances may be given in evidence against him, except when made under the influence of fear produced by threats or by intimidation or undue influence. The mere fact that admissions are made while under arrest does not render them inadmissible. The test is whether they were voluntarily made. *Marshall* v. *State* (1949), 227 Ind. 1, 83 N. E. 2d 763; *Gallegos* v. *Nebraska* (1951), — U. S. —, 72 S. Ct. 141, 96 L. Ed. 82. So long as an admission or confession is not the result of fear, force, threats, intimidation, coercion, fraud or undue influence, it may be used in evidence against an

---

[2] Art. 1, §11, Constitution of Indiana—"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

Art. 1, §14, Constitution of Indiana—"No person shall be put in jeopardy twice for the same offense. No person, in any criminal prosecution, shall be compelled to testify against himself."

accused. *Marshall* v. *State, supra; United States* v. *Carignan* (1951), — U. S. —, 72 S. Ct. 97, 96 L. Ed. 57.

Evidence of a confession or admission is *prima facie* admissible. The burden of showing incompetency is on the accused. *Schuble* v. *State* (1948), 226 Ind. 299, 79 N. E. 2d 647; *Marshall* v. *State, supra.* There is absolutely no evidence here that the admissions of the appellant were not freely and voluntarily made.

This is not a case of first impression in Indiana. The law as above stated was laid down by this court nearly fifteen years ago. In *Milbourn* v. *State of Indiana* (1937), 212 Ind. 161, 8 N. E. 2d 985, the appellant was charged with knowingly receiving stolen clover seed. The sheriff, armed with an invalid search warrant, arrested appellant and took him to his farm. While appellant sat in an automobile, the sheriff and his deputies searched the place. After the search was completed they interrogated appellant, who voluntarily admitted receiving the stolen goods, with knowledge that it was stolen, and having sold it for his own benefit. Before the trial, upon motion, the search warrant was held to be invalid, and evidence obtained in the search was excluded. It was contended that the confession and admission were obtained under color of the invalid search warrant, and the testimony should therefore have been excluded.

This court there pronounced the law substantially as above stated, and in its concluding remarks said: "Voluntary statements and admissions of guilt ▪ cannot be procured by a search or seizure. When such admissions are procured unlawfully, it is through inducement, fear, threat, intimidation, or undue influence, and there is no contention concerning, or evidence of, any such illegality in procuring the confession." It has full application to the case at bar.

See also *Quan* v. *State* (1939), 185 Miss. 513, 188 So. 568. The evidence was properly admitted.

Judgment reversed and cause remanded with instructions to sustain motion for new trial.

Emmert, J., not participating.

NOTE.—Reported in 102 N. E. 2d 199.

## ON PETITION FOR REHEARING

DRAPER, J.—In its petition for rehearing, apparently prepared by the prosecuting attorney of the 69th Judicial Circuit, the State complains that we held, in effect, that articles seized in an unlawful search "becomes sacred and inaccessible." We did not mean to so hold.

The cases below noted are now cited to sustain the State's assertion that where knowledge of the defendant's possession of articles used or useful in violating the law is gained or had by witnesses independently of the violation of the defendant's constitutional rights, the testimony of such witnesses may be heard. *Walker* v. *State* (1928), 200 Ind. 303, 163 N. E. 229; *Flum* v. *State* (1923), 193 Ind. 585, 141 N. E. 353; *Shorter* v. *State* (1929), 89 Ind. App. 288, 166 N. E. 287. It is now asserted that if other witnesses could testify that the stolen articles were in appellant's home prior to the search, or if the defendant took the stand and admitted possession of the articles, they would be admissible in evidence, and the mere bringing of the articles into court is not of itself reversible error.

These assertions may rest on solid ground. It may also be that the articles in question could properly be produced in court and identified by the owner as the articles which were stolen from him in connection with proof that they were stolen. But those questions were

not presented, and we did not and do not mean to intimate the answer to any of them.

It was not asserted, nor does the record show, that the articles were produced so that any other witness could identify them as articles seen by him in appellant's home before it was searched. It was not claimed, nor does the record show, that they were produced for the purpose of establishing them merely as the articles which had been stolen. There was no claim that the State was forewarned or had any reason to believe that the appellant would testify, and they wished to cross-examine him concerning them, and in fact the appellant did not testify.

We did not hold that because the appellant's premises were unlawfully searched and the articles were illegally seized they could under no circumstances and for no purpose be exhibited to the jury or introduced in evidence. As the case came to us it presented a course of conduct on the part of the prosecuting officials which was patently designed to acquaint the jury, by indirection, with the fact that these articles were found in the appellant's possession, in clear defiance of the appellant's constitutional rights, the decision of this court holding the articles to have been unlawfully seized, and the order of the trial court directing that the evidence be suppressed.

Neither in the briefs nor in argument were the present assertions made. The State's original brief admits that "the State was guilty of some indiscretion by virtue of bringing into court some of the evidence which had been previously ordered suppressed." It further admits that "such practices, although not strictly proper, may be attributed to the zeal of the Prosecutor in seeking a conviction." The effect of such conduct was sought to be avoided only by the fact that the court admonished the jury "to disregard the display

of these articles in making up their verdict," and in that connection our attention is directed to the fact that these "instances of admonition, totaling nine in all, may be found in the record."

Rehearing denied.

Emmert, J., not participating.

NOTE.—Reported in 102 N. E. 2d 763.