Silas Barton WRIGHT, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–12562.

Criminal Court of Appeals of Oklahoma.

May 14, 1958.

1090

Emmons Arrington, Shawnee, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Owen Watts, Asst. Atty. Gen., for defendant in error.

NIX, Judge.

Silas Barton Wright, plaintiff in error, hereinafter referred to as the defendant, was charged by information in the District Court of Pottawatomie County with the crime of obtaining a narcotic drug by fraud, second offense, tried before a jury, found guilty as charged and the punishment left up to the trial judge, who sentenced defendant to 5 years in the state penitentiary. The evidence reveals by the testimony of Joe Brasel, a pharmacist at the Marquette Pharmacy in Shawnee, that on October 20, 1956, defendant entered said pharmacy and presented a prescription, signed by Ned Burleson, M.D., made out to W. R. Robertson, calling for a medication containing 2 ounces of Tincture of Opium. Witness Brasel stated that he did not ask the defendant his name nor did defendant tell him. He further testified he had been alerted to watch for this prescription. That he told defendant it would be about 20 minutes before it was ready. Brasel went back to a phone and called city police who waited behind a counter until the defendant had received and paid for the prescription and then took the defendant into custody. Search of the defendant revealed an additional prescription calling for the same ingredients signed by the same doctor made out to Mr. A. C. Campbell.

Ned Burleson, M.D., Prague, Oklahoma, was called by the state and stated that the prescription was a common prescription for hemorrhoids, and that the defendant had said his name was A. C. Campbell; that he had issued him previous prescriptions for the same medication for hemorrhoids and that on the date of issuance defendant obtained the prescription under the name of Campbell and also said his

brother-in-law was suffering from hemorrhoids and wanted the same prescription. Dr. Burleson further testified defendant told him his brother-in-law's name was W. R. Robertson and was waiting in the reception room. Witness stated he was in a hurry and didn't bother to check, but wrote the prescriptions. The doctor further stated that he had always kept in stock an ointment containing the same ingredients which was a very common medication for hemorrhoids and the defendant requested it in liquid form and that he could see no reason why there should be any difference.

Ted Hagstrom, state narcotic agent for Oklahoma, testified he talked with the defendant after his arrest at the jail. Upon being asked by the County Attorney what he was told by the defendant, he answered:

"Q. And what did he tell you? A. Well, I—he was shown this bottle of medication and prescription blank that was taken off of him and had there and he was asked if he had secured this medication at a drug store and from the Marquette Pharmacy, *and he admitted he had*. Also asked him if—if he secured the prescription from the doctor. And we had also secured the other prescription from the drugstore, and we showed him both of them, and we asked him if he had secured both of them from Dr. Burleson, and he said he had. *And he also admitted on that date that he had served four previous terms in the penitentiary.*

"Mr. Arrington: Now if the Court please, I object to that.

"The Court: The objection is sustained as to that portion of the testimony. The jury is admonished not to consider the last statement."

Taylor Rogers, chief chemist for the State Crime Bureau, testified he ran tests on the ingredients of the prescriptions and the analysis showed 2 ounces of tincture of opium and that it contained one percent anahydrous morphine; that the opium could be separated from the other ingredi-

ents, but he could not be induced to take it for human consumption.

The state rested and defendant moved for a directed verdict which was overruled and exceptions preserved. The defendant did not take the stand but rested without presenting any testimony. The defendant relies for reversal upon the failure of the court to sustain a demurrer to the evidence and directing a verdict for the defendant and errors of law occurring at the trial which were excepted to by the defendant.

The defendant's contention has merit and requires serious consideration. It is to be noted that defendant was charged as a second offender under 63 O.S.A. § 417, and the charging part of the information read as follows:

"* * * the above named Silas Barton Wright than and there being, did then and there unlawfully, knowingly, wilfully, intentionally, wrongfully, and feloniously commit the crime of Obtaining a Narcotic Drug by Fraud, Second Offense, in that the said Silas Barton Wright did receive a certain medical prescription from the Marquette Pharmacy in Shawnee, Oklahoma, containing two (2) ounces of Opium by fraudulent use of a physicians prescription written for treatment of one W. R. Robertson of Dustin, Oklahoma, *Said Silas Barton Wright fraudulently represented himself to be the said W. R. Robertson,* for a specific purpose of obtaining a narcotic drug."

A careful review of all the state's testimony reveals a very weak case as to fraud. The doctor testified he gave defendant several prescriptions for the treatment of hemorrhoids. The prescription upon which this case was brought was made out by the doctor at the request of the defendant to W. R. Robertson, purported to be his brother-in-law and also was suffering from hemorrhoids. The testimony relates that defendant obtained the prescription in Lincoln County, but was arrested and charged for obtaining the drugs from a pharmacy in Shawnee, Pottawatomie

County. That he handed the prescription to the pharmacist without any representation whatsoever as to whom he might be. The record clearly shows that there was no conversation between defendant and the pharmacist from whom the drugs were purchased, except the defendant was advised it would take about 20 minutes. He never asked the defendant whether he was Robertson or not and defendant did not so represent himself.

It is to be noted that the information among other things says:

"* * * said Silas Barton Wright fraudulently represented himself to be the said W. R. Robertson * * *."

This is not borne out by the record. A different view would have been created had defendant informed the pharmacist that he was W. R. Robertson or had he so answered upon being asked. If this had taken place then and in that event, a clear case of fraud would have been established, but the record is completely silent as to any representation on the part of the defendant. According to state's witness Dr. Burleson, he wrote the prescription for the defendant's brother-in-law, who according to defendant's statement to him, was waiting in the reception room. The doctor did not take time to check, but wrote the prescription. The defendant had it filled without being asked his name or if he was Robertson. The state did not attempt to prove that W. R. Robertson did not exist or had not authorized defendant to obtain the prescription for him. Dr. Burleson said defendant had told him his name was A. C. Campbell which was a false name. However, if this constituted a violation of the narcotic statute, the crime would have been in Lincoln County and the District Court of Pottawatomie County would have been without jurisdiction. However, since defendant advised Dr. Burleson he was getting the prescription for his brother-in-law who was waiting in the outer room, no fraud was committed unless the brother-in-law (W. R. Robertson) was a fictitious character or was not in the waiting room. The doctor admits he did not check to see because he was in a

hurry. Evidently no effort was made to investigate the existence of Mr. Robertson whose address was given by the defendant as Dustin, Oklahoma.

■ The story of the defendant which was related by the state witness would not constitute fraud and not a scintilla of evidence was offered to discredit it. Defendant had obtained a prescription at the same time under the name of A. C. Campbell which was found on him, but no effort was made by defendant to have it filled. Consequently, it cannot be used as the basis for this action. Likewise, if a crime was committed by defendant in obtaining that prescription under a false name, jurisdiction was in Lincoln County, not Pottawatomie. In view of the weakness of the testimony as to fraud, this court must conclude that one of the prevailing factors in obtaining a conviction was the prejudicial testimony of Ted Hagstrom who voluntarily while testifying in chief states:

> "* * * and he also admitted on that date that he had served four previous terms in the penitentiary."

The defendant objected to this statement and the court sustained the objection and admonished the jury not to consider it.

■■ This type of testimony has often been referred to as an "evidential harpoon" that has been wilfully jabbed into the defendant and then jerked out by an admonition to the jury not to consider the same. This court has never condoned, but often criticized a witness being intoxicated with eagerness in an all out effort to obtain a conviction. We are fully aware that these harpoons are often thrown through inadvertence or ignorance of the law, but we cannot lead ourselves to believe that such was the case. The witness Hagstrom is one with long experience in law enforcement who now occupies the position of Narcotic Agent for the State of Oklahoma, affiliated with the Attorney General's office, which office serves as an advisor of the law to most state officials. Surely, he was conscious of the rules of evidence that prohibit such actions of a witness. It would seem unreasonable to say he was unaware of the consequences of his actions. It is of such universal recognition that elaborating seems useless to recite again that to place a defendant's character or reputation in issue before it becomes an element of the trial is error of the worse type. Evidence relative to previous conviction, with the exception of those alleged in the information is permitted for one purpose and one only and that is to effect the credibility of the witness. See Tit. 12 O.S.A. § 381. And where defendant did not present himself as a witness nor present testimony of good character, it is forbidden. In a trial of a criminal case the issue is singular, as to guilt or innocence: "Did the defendant commit the crime charged?" and not upon the question, "Has the defendant the reputation of committing crime before."

In the case of Slaughter v. State, 94 Okl.Cr. 407, 236 P.2d 993, 995. Judge Brett said:

> "This court has repeatedly condemned the practice of officers voluntering evidence of prior convictions and matters relating to the character of the defendant where he has not made such an issue * * *"

and further stated:

> "We cannot condemn this practice too severely."

■ In the instant case the voluntary injection of such evidence was highly prejudicial and though the court sustained the objection and admonished the jury not to consider it, the bell could not be unrung. Every person is entitled to a fair and impartial trial and in accordance with the rules of evidence. It cannot be said that defendant was afforded a fair trial if improper testimony appears prejudicial to his rights. Officers must be aware that an overzealous attitude is, in most instances, detrimental to the prosecution and often results in a retrial of the case at considerable expense to the state. Officers are to be commended for their diligence in bringing about the arrest and conviction of law violators, but the fundamental rights

afforded by the law and the rules of evidence must not be trampled underneath in their efforts to do so. The evidence of Officer Hagstrom was most improper and flagrantly violated the rules of evidence and such error standing alone is indeed grounds for reversal.

From a review of the record additional evidence should be presented to establish fraud as alleged in the information and this case is hereby reversed and remanded for a new trial. If the county attorney is unable to obtain additional evidence sufficient to prove the charges, it should be dismissed.

BRETT, P. J., and POWELL, J., concur.