WALTER SMITH WHITE v. STATE OF INDIANA.

[No. 569S126. Filed August 25, 1971.]

*James R. White,* of New Castle, *Frederick F. McClellan,* of Muncie, for appellant.

*Theodore L. Sendak,* Attorney General, *J. Frank Hanley,* Deputy Attorney General, for appellee.

PRENTICE, J.—Defendant (Appellant) was convicted of a theft committed in Henry County, Indiana, and sentenced to the Indiana State Prison for not less than one (1) nor more than ten (10) years.

The sole error presented on appeal is the denial of Defendant's Motion for a mistrial, after a State's witness, Police Officer Robert E. Estes, Jr., improperly testified with reference to the defendant's having been brought into the Anderson, Indiana Police Station in reference to an armed robbery in the city of Anderson, Madison County, Indiana. Officer Estes' testimony came during the State's case in chief, and his entire testimony is as follows:

"ROBERT ESTES, witness for State, being first duly sworn on the 14th day of January, 1969, testified as follows:

DIRECT EXAMINATION BY JAMES R. KELLAM, P.A.

Q. Would you state your name, please?

A. Robert W. Estes, Jr.

Q. And where do you reside, sir?

A. 1527 Johnson Avenue, Anderson, Indiana.

Q. And what is your employment, sir?

A. I'm employed at two different locations at this time. I'm a member of the Anderson Police Department and also Plant Protection, Delco-Remy.

Q. And what was your employment during the month of April, 1968?

A. I was a major, head of the Detective Division, Anderson Police Department.

Q. Calling your attention to the month of April, did you have occasion to see the defendant, Walter Smith White?

A. I did, sir.

Q. And what was that occasion?

A. That's when this man was brought into our department with reference to an armed robbery case in our city.

MR. McCLELLAN: To which we OBJECT, your Honor, and MOVE to STRIKE the answer and MOVE for a MIS-TRIAL.

COURT: Allright, let's excuse the Jury.

(JURY EXCUSED)"

After hearing arguments of counsel, during which the prosecutor acknowledged the error but assured that it was only a slip on the part of the officer who had been called only for the purpose of identifying the defendant, the court overruled the motion on authority of *Duke* v. *State* (1968), 249 Ind. 466, 233 N. E. 2d 159, struck the objectionable testimony and admonished the jury to disregard it. Defendant had contended that the prosecutor knew the testimony to be inadmissible, that it was in the minds of the jurors and could not be erased and was prejudicial to him, but apparently was unable to present persuasive authority in support of his motion.

The question considered is one that must, of necessity, be determined by the facts of each case as it arises, and this doubtlessly is the reason for the general rule, followed in this state and elsewhere, that the granting of a mistrial rests largely in the sound discretion of the trial judge. *Duke* v. *State* (*supra*).

A factual situation similar to the one at bar does not appear to have been previously reviewed by this Court, although the right to have a mistrial declared by reason of the jury's having been erroneously subjected to incompetent and inadmissible evidence has been long recognized. *Rohlfing* v. *State* (1951), 230 Ind. 236, 102 N. E. 2d 199. In the *Rohlfing* case (supra) the prosecution several times during the course of the trial displayed to the jury certain items of evidence that had been previously excluded by an order to suppress. In each instance, the court instructed the prosecutor to remove the articles and admonished the jury but denied Appellant's motion for a mistrial. In reversing, we said:

"The articles were not offered in evidence. The state did not offer to exhibit them to the jury. It offered no direct evidence that the articles were ever in the possession of the defendant or that they were ever seen on or recovered from his premises. But the mere fact that they were displayed before the jury, particularly when considered in connection with the nature and sequence of the testimony elicited from the witness Doerflinger, *was obviously calculated to persuade the jury* that such was the fact. The determined efforts of the attorneys for the State to keep these articles under the eye and in the mind of the jury, with consequent efforts on the part of the appellant to have them removed, would of itself tend to impress the jury that there was evidence damaging to the appellant." 230 Ind. at 240. (Our emphasis)

Quoting from the earlier case of *Derry* v. *State* (1932), 204 Ind. 21. 182 N. E. 701, we continued:

"* * * *The purpose of their exhibition before the jury is evident.* No one, not even the state, will doubt their prejudicial influence on the jury, although they were not actually introduced in evidence. It is hardly reasonable to assume that the jurors would be able to dismiss from their minds the impressions formed from the day and a half observation of them. *We know from common knowledge that such a display would tend to prejudice the jury, not only against the defendant himself but against any defense he might have to offer.*" 230 Ind. at 241. (Our emphasis)

Being charitable towards the prosecutor, in view of the misconduct, we made the following elementary declaration concerning the inadmissible evidence:

"* * * Such an order does not serve merely to throw up obstacles which make proof more difficult. It strikes at the right to prove. It concerns itself not with *methods,* but with *rights.* It absolutely prohibits the state and its officers from putting evidence illegally obtained before the jury by methods either direct or devious." 230 Ind. at 242.

In the civil case of *Taggart* v. *Keebler* (1926), 198 Ind. 633, 154 N. E. 485, the plaintiff was able several times to get before the jury a statement of the defendant made shortly after the accident, "I am heavily insured." Subsequently the court

instructed the jury to disregard such statement. In the earlier case of *Martin* v. *Lilly* (1919), 188 Ind. 139, 121 N. E. 443, counsel for the defendant was permitted on voir dire to make an offer to prove, in the presence of the jury, that the defendant was insured. In both cases we reversed, notwithstanding the giving of proper instructions that the matter of insurance not be considered; and in both cases we said: "It is true that erroneous and extraneous matters sometimes get into a law suit through the zeal of counsel, and, if checked at once by the trial court and the jury is instructed, this may be cured; *but one party may not be permitted to get the other into a dying condition and then expect the court to revive him by instructions.*" 188 Ind. at 146. (Our emphasis)

Turning to other jurisdictions wherein the courts have considered the adequacy of striking improper testimony and admonishing the jury, as opposed to declaring a mistrial, we find that the following matters have been considered:

1. The effect of constitutional provisions, statutes or rules relating to harmless error.
2. The degree of materiality of the testimony.
3. Other evidence of guilt.
4. Other evidence tending to prove the same fact.
5. Other evidence that may cure the improper testimony.
6. Possible waiver by the injured party.
7. Whether the statement was volunteered by the witness and whether there had been deliberate action on the part of the prosecution to present the matter to the jury.
8. The penalty assessed.
9. Whether or not the testimony, although volunteered by the witness, was in part brought out by action of the defendant or his counsel.
10. The existence of other errors.
11. Whether the question of guilt is close or clear and compelling.
12. The standing and experience of the person giving the objectional testimony.
13. Whether or not the objectionable testimony or misconduct was repeated.

The United States Court of Appeals, District of Columbia Circuit, in 1966 reversed in the case of *Gregory* v. *United States of America,* 369 Fed. 2d 185.

"A prosecution witness, Police Officer Johnson, on two occasions volunteered testimony concerning an offense, for which appellant was under indictment in another case, totally unrelated to the crimes for which appellant was on trial. The police officer was called in rebuttal by the Government to testify that three weeks before the events in suit appellant was clean shaven, several of appellant's witnesses, including himself and his barber, having testified that for some months prior to the robbery appellant had been wearing a goatee. The prosecutor had previously assured the court and defense counsel that the Government would not develop the evidence that at time the officer saw appellant clean shaven, appellant had assaulted him with a gun.

On direct examination of the police officer, no reference to the assault with the gun was made. On cross, however, when the officer began a non-responsive answer to a question, defense counsel objected, fearing that he might voluntarily introduce the gun incident. The trial court overruled the objection and ordered the witness to finish his answer. In finishing his answer, later held non-responsive by the court, the officer testified to the assault with a gun. Whereupon defense counsel moved for a mistrial. The motion was denied with the simple instruction that the jury should disregard the answer. The motion for the mistrial and the instruction to the jury to disregard the witness' testimony with reference to the gun incident were made in the presence of the officer on the witness stand. Five questions later, in the same cross-examination, the officer again volunteered the testimony that appellant had assaulted him with a gun. Again there was a motion for a mistrial, which was again denied with a perfunctory instruction to the jury to disregard the testimony.

With reference to the effectiveness of the court's cautionary instruction to the jury to disregard the improper testimony, particularly the instructions given in this case, it may be useful to quote again from Mr. Justice Jackson, concurring in Krulewitch v. United States, 336 U. S. 440, 453, 69 S. Ct. 716, 723, 93 L. Ed. 790 (1949) : 'The naive assumption that prejudicial effects can be overcome by instructions to the jury * * * all practicing lawyers know to be unmitigated fiction.' The volunteering by police officers

of inadmissible testimony prejudicial to the defendant has been condemned time and again by both state and federal courts. For example, in Wright v. State, Okl. Cr. App., 325 P. 2d 1089, 1093 (1958), where a law enforcement officer injected this type of prejudicial testimony, not twice as here, but only once, the court stated: *'This type of testimony has often been referred to as an "evidential harpoon" that has been wilfully jabbed into the defendant and then jerked out by an admonition to the jury not to consider the same. This court has never condoned, but often criticized a witness being intoxicated with eagerness in an all out effort to obtain a conviction. * * * Officers must be aware that an over-zealous attitude is, in most instances, detrimental to the prosecution and often results in a retrial of the case at considerable expense to the state.'*" 369 F. 2d at 189-90. (Our emphasis)

In the *Wright* case (*supra*) it was held to be error for the State Narcotics Agent to testify as to the admission by the defendant that he had served four previous terms in the penitentiary, and that such error was prejudicial to the defendant and required reversal, though objection to such improper testimony was sustained and the jury was admonished not to consider it. The defendant did not take the stand and his character or reputation was not an element of the offense for which he was being tried, hence the evidence of previous convictions was not admissible. With respect to such testimony by the Narcotics Agent, the court said:

"This type of testimony has often been referred to as an 'evidential harpoon' that has been wilfully jabbed into the defendant and then jerked out by an admonition to the jury not to consider the same. This court has never condoned, but often criticized a witness being intoxicated with eagerness in an all out effort to obtain a conviction. We are fully aware that these harpoons are often thrown through inadvertence or ignorance of the law, *but we cannot lead ourselves to believe that such was the case. The witness Hagstrom is one with long experience in law enforcement and who now occupies the position of Narcotic Agent of the State of Oklahoma,* * * * Surley he was conscious of the rules of evidence that prohibit such actions of a witness. * * * In a trial of a criminal case the issue is singular, as to guilt or innocence: 'Did the defendant commit the crime

charged?' and not upon the question, 'Has the defendant the reputation of committing crime before. * * *

* * * Officers are to be commended for their diligence in bringing about the arrest and conviction of law violators, but the fundamental rights afforded by the law and the rules of evidence must not be trampled underneath in their efforts to do so.* * *." 325 P. 2d at 1093-94. (Our emphasis)

In another Oklahoma case the court severely criticized the police officer witness for making a voluntary statement prejudicial to the rights of the defendant.

"* * * This Court has repeatedly and consistently condemned and chastised the practice of an experienced police officer injecting an 'evidentiary harpoon' into a trial—which could have otherwise been affirmed—and requiring this Court to waste its time in reviewing such a case, and the State of Oklahoma in having to try the case again. * * * This type of testimony can only serve in a close case to snatch defeat from the jaws of victory, for, in a close case, it will result in a reversal and the costly expense of a new trial to the public. * * * The eagerness of Officer Pendry to convict the defendant has proved costly to the state." *Sandersfield* v. *State* (1969), 461 P. 2d 1019-20.

The same results in similar cases have been reached in the State of Michigan. *People* v. *Camel* (1968), 11 Mich. App. 219, 160 N. W. 2d 790; *People* v. *Greenway* (1962), 365 Mich. 547, 114 N. W. 2d 188.

In the *Camel* case (*supra*) the defendant was convicted by jury. He appealed, claiming that the court below erred in denying his motion for mistrial. His motion was prompted by the following interrogation of a police officer called by the state:

"Q. All right. Then do you recall the conversation that you had after you advised him of his rights?
A. Yes sir. I asked him his name and address and such, and then he stated that he had got out of Jackson Prison." 160 N. W. 2d at 790.

In reversing the trial court the court quoted from *Greenway, supra:*

"The answer by Carter, *which the prosecution clearly anticipated or hoped for, was calculated to prejudice* the minds of the jurors against the defendant." 160 N. W. 2d at 791. (Our emphasis)

In the *Greenway* case (*supra*) the prosecution called a witness and asked him where he had met the defendant. When he answered, "In the Arkansas Prison," defense counsel moved for a mistrial which was denied. The Supreme Court reversed basing its conclusion on the fact that the prosecutor had been forewarned on the fact that the witness had made a statement to the police and that the record disclosed the prosecutor was familiar with that statement.

The United States Court of Appeals for the Fifth Judicial Circuit has also held that improper testimony of a Government Narcotics Agent warranted the granting of a mistrial, notwithstanding that the testimony had been stricken and justified its holding, in part at least, upon the prosecution's calculated impropriety. In *Helton* v. *United States of America* (1955), 221 F. 2d 338, the court said:

"Although unable to convince us that the evidence on which he was convicted should be suppressed because of an illegal search, we are nevertheless constrained to hold that the appellant is entitled to, and must have, a new trial because of the admission in evidence against him of improper prejudicial testimony. The federal agent, who was called in by the city police upon the arrest of appellant, testified that he questioned appellant regarding the marijuana found in and around the home. He testified that the appellant told him 'that he had been smoking marijuana intermittently very seldom for the past four or five years.' There was an immediate objection by counsel for the defense, together with a concession by the prosecuting attorney, that the witness' remark was an improper one and that the reference to appellant's smoking marijuana in the past should be excluded from the jury.

Acting on the request of both counsel the trial court made the following ruling, 'On suggestion or request of the District Attorney, and of the defendant's counsel, of any admission or statement by the defendant about being a marijuana smoker at some previous time, is withdrawn from

them, and stricken from the record.' Not being satisfied that the ruling by the court could blot out from the jury's mind the evidence improperly introduced respecting a totally disconnected and extraneous violation of the law by the appellant, appellant's counsel moved for a mistrial, which was denied.

It is hornbook that, absent a requirement of showing system or intent, evidence of offenses not charged in the indictment is not only inadmissible but prejudicial if admitted. Boyd v. United States, 142 U. S. 450, 12 S. Ct. 292, 35 L. Ed. 1077; Guilbeau v. United States, 5 Cir., 288 F. 731. It is true that here the trial court ordered the improper evidence stricken from the record, but he gave no instruction whatever to the jury to disregard the improper testimony. In fact, in the circumstances of this case, it is doubtful that any instruction, however strong, would have succeeded in destroying the picture which this remark created in the jury's mind of the appellant smoking marijuana, with marijuana growing in his back yard, with some in his bedroom and some in his car. The defense in this case suggested that the marijuana found on the appellant's premises was left there by a former roomer. *Whatever hope the appellant had of the jury's accepting that defense was blighted by the admission that appellant himself was a marijuana smoker.*

It is admitted, of course, that as a general rule, evidence which is withdrawn from the consideration of the jury by the direction of the trial judge may not serve as a basis for reversible error, that the direction of exclusion by the court cures any error which may have been committed in its introduction. * * * *But where, as here, the improper evidence was calculated to make such an impression on the jury that no direction from the court, however strong, can eliminate the prejudice thereby created, the trial court must declare a mistrial."* 221 F. 2d 340-41. (Our emphasis)

In the case of *Fiswick v. United States of America* (1946), 329 U. S. 211, 91 L. Ed. 196, 67 S. Ct. 224, the Supreme Court of the United States stated what we believe to be the standard in determining whether error was harmless or substantially prejudicial. The case involved the admission into evidence of certain admissions of co-defendants. The Solicitor General conceded that the ruling of the trial court was erroneous but argued that the error was harmless under the "harmless error" statute (Judicial Code § 269, 28 U.S.C.A.

§ 391, 8 FCA Title 28, § 391). Quoting from the earlier case of *Kotteakos* v. *United States*, 328 U. S. 750, 90 L. Ed. 1557, 66 S. Ct. 1239, where the question had been settled, the court re-affirmed the following proposition:

"If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand, except perhaps where the departure is from a constitutional norm or a specific command of Congress . . . But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the convention cannot stand.

We cannot say with fair assurance in this case that the jury was not substantially swayed by the use of these admissions against all petitioners. It is not enough to say that there may be a strong case made out against each petitioner. The indictment charges a conspiracy, not the substantive crime of falsely registering. The evidence that petitioners conspired with each other and with Draeger, Vogel and others, is not strong. Though we assume there was enough evidence to go to the jury on the existence of that conspiracy, *the case was one which a prosecutor would be anxious to bolster.*" 329 U. S. at 218. (Our emphasis)

In the case at bar, three witnesses testified that they were present at the holdup and identified the defendant as the robber. The defendant claimed a mistake in identity and presented himself, his wife and her mother and father, all of whom testified that they were together at a point some distance from the scene of the crime at the time of its commission. In addition, the defendant presented six character witnesses in his behalf, both as to honesty and integrity and for peace and quietude. All testified that the defendant's reputation for such qualities was good. Except as might have been inferred from the improper testimony of Officer Estes, the

prosecution did not challenge the defendant's reputation for these qualities nor for truth and veracity. No evidence was offered in rebuttal.

The foregoing is all of the evidence of probative value that was presented at the trial. The jury was thus confronted with determining whether to place the greater reliance upon the correctness of the identification by the State's witnesses or upon the integrity of the defendant and his alibi witnesses; for it is inescapable that if the prosecuting witnesses were accurate in their identification, not only the defendant, but his wife and her parents as well, committed unmitigated acts of perjury. We do not question the sufficiency of the evidence to sustain the verdict; but we cannot say with certainty that with such a difficult decision to make in the face of such conflicting testimony the jury was not influenced by the improper testimony of Officer Estes deliberately induced by the prosecutor, notwithstanding the admonition by the trial judge to disregard it.

It is to be noted that the only evidence offered by Officer Estes was the improper evidence of another charge pending against defendant. He knew nothing concerning the defendant's involvement, if any, with the crime for which he was standing trial. To justify the presence of Officer Estes, the prosecutor said that he was brought for *"purposes of identification only."* Identification of what? The man who was suspect in another criminal involvement and is, therefore, to be regarded with suspicion? We think it apparent that the sole purpose of calling the witness was to wield the *evidential harpoon,* deliberately calculated by counsel to prejudice the jury against the defendant and his defense. While this Court is generally reluctant to override the decision of a trial judge in his determination that error was harmless, in view of an admonition, we feel that where there are serious conflicts in the evidence entitling the jury to go either way upon the issue of guilt or innocence, it is especially

important that they not be subjected to improper influences. In such a case, the defendant should be given the benefit of reasonable doubts; and in a case such as this, where the error was deliberately committed and amounted to misconduct on the part of counsel, intervention becomes more compelling. Although not entitled to a perfect trial, the defendant is entitled to a fair trial; and where counsel has deliberately violated the rights of Defendant and there is reasonable grounds to believe that such violation may have prejudiced his cause, a mistrial should be declared, if moved by the injured party.

This case is readily distinguished from those cited by the State. In *Chesterfield* v. *State* (1923), 194 Ind. 282, 141 N. E. 632, the objectional question was never answered. In *Duke* v. *State* (1968), 249 Ind. 466, 233 N. E. 2d 159, there was no indication that the erroneous testimony, although given by a police officer, was deliberately intended to be prejudicial and further there was some reason to believe that defense counsel had induced it by high pressured and vindictive cross-examination. *Duncan* v. *State* (1908), 171 Ind. 444, 86 N. E. 641, simply applied the general rule that striking an objectionable question and answer and admonishing the jury to disregard it cures the error. That case did not admit of any of the exceptions; and as previously stated, there are circumstances where the harmful effects of error simply cannot be so easily removed. In *Ward* v. *State* (1965), 246 Ind. 374, 205 N. E. 2d 148, the Court stated the rule differently and said that it will apply, unless it is made to appear that the error was not cured. It did not infer that the error was always cured by a withdrawal and admonition.

The State apparently labors under the erroneous belief that in such cases as these, the burden is upon the party claiming error to conclusively demonstrate that the error caused the verdict to be what it was and that it would have been otherwise had the error not occurred. True, the burden is upon him to show that he was harmed; but this is

done when it is made, by all the circumstances, to appear that the error placed him in a position of grave peril to which he should not have been subjected.

The judgment is reversed and a new trial ordered.

Arterburn, C.J., Givan, DeBruler and Hunter, JJ., concur.

NOTE.—Reported in 272 N. E. 2d 312.