**Charles Clifford CLARK, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 1080S404.**

Supreme Court of Indiana.

Feb. 19, 1982.

George K. Shields, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Palmer K. Ward, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

The appellant, Charles Clifford Clark, Jr., was charged with attempted robbery while armed with a deadly weapon, a class B felony (Ind.Code § 35–42–5–1, Ind.Code § 35–41–5–1), and criminal confinement while armed with a deadly weapon, a class B felony (Ind.Code § 35–42–3–3). He was sentenced to thirteen years on each count, the sentences to run concurrently. This appeal follows the denial of his motion to correct errors.

Two issues are presented:

(1) Whether the trial court erred in denying the defendant's motion for a mistrial.

(2) Whether there was sufficient evidence to support the verdict.

I.

The State called Alan Bucksot, an investigator with the Marion County Prosecutor's Office, as a witness. When asked how he became involved in the investigation of the case against the defendant, he replied that two detectives from the Indian-apolis Police Department "came to my office one day and said that they were involved in investigating a robbery at 1740 Calvin Street." The defense moved for a mistrial, out of the presence of the jury, on the ground that the crime mentioned was not part of the present case, and that it was mentioned deliberately to prejudice the defendant. The State countered that there was no suggestion that the defendant committed the robbery mentioned by Bucksot and that his testimony was for the purpose of explaining how an array of photographs was gathered. After further argument, the defense and the prosecution agreed to stipulate that the defendant did not commit, and was not a suspect in, the robbery mentioned by Bucksot, and the trial court denied the motion for a mistrial. When the jury returned, the prosecution then read the stipulation to the jurors. The trial judge struck Bucksot's reference to another robbery from the record, and admonished the jury not to consider it in any way in arriving at a verdict.

On appeal, the defendant argues that the admonition was insufficient to cure the prejudice, claiming that the facts in this case are very similar to those in *White v. State*, (1971) 257 Ind. 64, 272 N.E.2d 312. In *White*, this Court reversed a theft conviction because at trial a police officer testified, in answer to a question about what the occasion was for his seeing the defendant, "[t]hat's when this man was brought into our department with reference to an armed robbery case in our city."

The "sole purpose of calling the witness [in *White*] was to wield the evidential harpoon, deliberately calculated by counsel to prejudice the jury against the defendant and his defense," we said, holding that a mistrial should have been declared. *Id.* at 76, 272 N.E.2d at 312.

The facts here, however, are similar to those in a recent case in which we held that an admonition was sufficient to cure any prejudice when during direct examination a crime scene technician was asked why he returned to the house where a robbery occurred. He replied: "A person had been

apprehended [at another address]. The general description of this person was close to the description that had been given by the lady on Blackford. We thought it to be a good idea to take this person by to see if the two might have been the same person on both offenses." *Davis v. State*, (1980) Ind., 418 N.E.2d 203, 204. In *Davis*, we distinguished the facts from those in *White*. We said:

"[I]t is not the case here, as in *White*, that the witness was called solely to wield the evidentiary harpoon. Officer Pointer gave competent testimony concerning his search for physical evidence at the Blackford house. The question that elicited the testimony at issue, moreover, was not designed solely to bring in the inadmissible testimony, but was apparently designed to establish that the return trip to Blackford was to bring by a suspect for identification within a short time after the crime had occurred.

In *White* we felt particularly compelled to override the trial court's determination that an admonition would suffice to cure any prejudice because we found that the deliberate interjection of inadmissible evidence of other crimes amounted to misconduct by the prosecution. We did not, however, restrict our intervention to such blatant instances of prosecutorial misconduct.

The gauge is not exclusively the way in which the testimony entered the case but rather the probable impact of the irregularity on the verdict. We require a high level of assurance that there was no residuum of prejudice left after the jury was admonished."

The present case is similar to *Davis*, where we concluded that "in light of the inadvertence of the remark, its vagueness as to the defendant's involvement in another crime, and the trial court's admonition to and polling of the jurors" about whether they could heed the admonition, the inadmissible testimony did not affect the verdict. Here, the witness did not, as in *White*, link the defendant with the other robbery. The witness gave competent testimony about the victim's identification of the defendant through the use of a photographic array. The stipulation, the striking of the answer, and the admonition served to insure that the verdict was not affected by the inadmissible statement.

## II.

The defendant next claims that the verdict was not based on substantial evidence and was contrary to the evidence and the law. Furthermore, he claims, the findings of guilt were made only because the jury failed to reconcile the evidence with the defendant's theory of innocence, thereby denying him his lawful presumption of innocence.

■ The gist of this claim is that the only substantive evidence against the defendant was the eyewitness testimony of the victim, Waclaw Biskupski, and that the accuracy of the identification was doubtful. Further, he argues that the pre-trial identification procedures were tainted and resulted in the denial of a fair and impartial trial. This latter argument is not available for review because there was no motion to suppress the identification during trial.

The defendant points out that the State did not produce the handgun allegedly used in the attempted robbery, or any other physical evidence, nor were there any other witnesses linking the defendant to the crime. The defendant argues that Biskupski's identification should not, alone, be considered enough to convict when considered in the light of the other evidence presented at trial. The other evidence was testimony of defense witnesses who testified that the defendant was in Anderson, one hour's drive from the scene of the crime, when the robbery occurred. The defendant argues that the State presented no evidence to rebut the alibi defense. In conclusion, the defendant argues that when the evidence is viewed as a whole, there is substantial reasonable doubt that he committed the crimes.

■ The victim positively identified the defendant from an array of photographs, at

a line-up, and at trial. The unequivocal uncorroborated testimony of a victim is sufficient to support a guilty verdict. *Richardson v. State*, (1979) Ind., 388 N.E.2d 488.

█ The claim that the alibi defense was not rebutted by the State is without merit:

"The state ... does not bear the burden to directly rebut a defendant's alibi. Rather, the jury is warranted in disbelieving an alibi if the State's evidence in chief is such as to render the disbelief reasonable." *Jones v. State*, (1978) 267 Ind. 680, 684, 372 N.E.2d 1182.

█ The State's case—the victim's identification—was sufficient to render disbelief in the alibi reasonable.

The conviction is affirmed.

GIVAN, C. J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.