**Roger HITT, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 1282S508.

Supreme Court of Indiana.

May 29, 1985.

Susan K. Carpenter, Public Defender, David P. Freund, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Latrealle Wheat, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Following a trial by jury, Defendant (Appellant) was convicted of murder, Ind.Code § 35–42–1–1 (Burns 1979) and was sentenced to sixty (60) years imprisonment. His direct appeal presents six (6) issues for our review, as follows:

(1) Whether the evidence was sufficient to sustain the conviction;

(2) Whether the trial court erred in denying a motion for mistrial predicated upon a witness' violation of the court's separation of witnesses order;

(3) Whether the trial court erred in denying Defendant's motion for a continuance;

(4) Whether the trial court erred in quashing a subpoena to a television reporter and a subpoena *duces tecum* to a television broadcasting company.

(5) Whether the trial court erred in denying a motion for mistrial and a motion for a continuance after a witness had testified that she had viewed news media coverage of the trial prior to her testimony;

(6) Whether the sentence imposed is manifestly unreasonable.

## ISSUE I

■ Our review is governed by the following standard:

"Upon a review for sufficient evidence, this Court will look only to the evidence most favorable to the State and all reasonable inferences to be drawn therefrom. If the existence of each element of the crime charged may be found therefrom, beyond a reasonable doubt, the verdict will not be disturbed. In such a review, we will not weigh conflicting evidence nor will we judge the credibility of the witnesses." (citations omitted).

*Loyd v. State* (1980), 272 Ind. 404, 407, 398 N.E.2d 1260, 1264, *cert. denied*, 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105.

The evidence most favorable to the State discloses that on Friday, November 27, 1981, Brian Mathies sold the Defendant a .22 caliber revolver. On that same evening Steven Heath and the Defendant drank beer and smoked marijuana, and Defendant asked Heath if he would like to go target shooting the next day.

On Saturday morning, November 28, 1981, the Defendant drank beer and smoked marijuana. At approximately 11:30 a.m., he and Heath, along with Heath's girlfriend, Sandy Cullop, drove in Heath's automobile to a location by the White River where they drank, smoked marijuana, and shot the gun at cans. When all of the shells had been spent, they drove to Vincennes, where Heath purchased a box of 500 shells. They then drove north out of Vincennes with no particular destination in mind.

As they were driving along U.S. 41, they observed two hitchhikers, and the Defendant suggested that they stop and give them a ride. The two, Rhonda Hardway, a wom-an about twenty-three (23) years of age, and a boy, John Goodrich, sixteen years of age, accepted the ride. Shortly thereafter, Hardway and Goodrich were invited to go target shooting with the three. The Defendant showed them the gun and made statements to the effect that he had previously shot hitchhikers. As they drove along, the Defendant and others drank whiskey and smoked marijuana. At one point, the Defendant fired the gun out of the automobile's window.

When they arrived at a small concrete bridge they stopped. The Defendant drew the gun, pointed it at Hardway, and told her to run. She did not move, and then the Defendant giggled and said to Goodrich, "I'm gonna blow your brains out." Subsequently, all but Cullop took turns shooting at the cans. Thereafter, Hardway and Cullop sat in the car, which was parked facing away from the bridge where the three (3) men continued to take turns shooting the gun. Defendant had fired the gun three or four times when he suddenly turned and fired. Goodrich fell to the ground with a bullet hole in his forehead. When Heath asked the Defendant what he was going to do, the Defendant said something about getting rid of the girl. Subsequently, Defendant rolled Goodrich's body off of the bridge. After grabbing Cullop's shirt, he made the statement, "We're all going to forget this, won't we?" They all left the site in the automobile, and Defendant told Hardway to forget what she had seen. A short time later, Heath let Hardway out of the car and drove the Defendant to his house.

Hardway stopped the driver of a passing automobile and told him that her cousin had been shot in the head. Police were called, and Goodrich was located and given artificial respiration and cardiopulmonary resuscitation. When the ambulance arrived, Goodrich's heart was beating, but it stopped shortly thereafter, and he was pronounced dead on arrival at Good Samaritan Hospital in Vincennes. Heath and Cullop told a former Vincennes police chief what had happened, and the police arrested the

Defendant, who maintained that the gun had fired accidentally. Brian Mathies testified that he saw the Defendant at approximately 6:30 p.m. on November 28 and that the Defendant told him at that time that he had shot a boy because the boy argued with him and that he was going to kill all of them so that there would be no witnesses.

Defendant argues that the evidence failed to prove that he "knowingly" or "intentionally" killed John Goodrich, but that it does establish that he "recklessly" killed him. Thus, he argues, we should enter judgment of guilt on the lesser included offense of reckless homicide and remand the cause for resentencing. The State concedes that the evidence was in conflict in many critical respects and that such evidence would have sustained a conviction of murder, voluntary manslaughter, or reckless homicide. However, as the State points out, it was the jury's responsibility to determine the credibility of the witnesses and the weight of the evidence. The evidence recited above is sufficient to sustain the verdict of the jury.

## ISSUES II, III, IV

In the midst of the trial, after the testimony of Rhonda Hardway had been given, defense counsel notified the court that, as he was returning from lunch, he saw Hardway talking to a television newsman in violation of the court's order for separation of witnesses. He then requested an opportunity to examine Hardway as to the extent of the violation of the court's order. The court granted his request, and Hardway was questioned outside the presence of the jury. She stated that she recalled having been instructed by the court not to discuss her testimony with anyone and that she told the reporter that she could not talk to him. The reporter told her that it was only the jury members to whom she could not speak and she then responded to his questions, although she did not say anything about her testimony. She stated that the reporter had asked her what had happened on November 28, and she told him that her cousin had been shot. She further told him that she had not seen the shooting occur. Finally, when the reporter asked her what justice she would like, she replied that she would like to execute the Defendant herself but that doing so would get her nowhere. She testified that those questions and responses constituted the full extent of the interview.

The court also elicited information from the Prosecutor that the news director of the television station had assured him that the film of the interview would not be broadcast and that the television reporter had not been in the courtroom at any time during the trial.

Defense counsel then moved for a mistrial which the trial court denied with the following comment:

> "[Y]ou have to show some prejudice before I will support a motion for mistrial. If that occurs from this point on then I will reconsider it but at this point, in my judgment, there's been no prejudice upon your defendant by reason of this technical violation of the separation order." (R. at 1269).

Defense counsel then moved for a continuance and an order directing the television company to produce its tape or film and the reporter in court so that he could ascertain the scope of the violation. These motions were also denied. Defense counsel then presented a signed subpoena for the television reporter and a signed subpoena *duces tecum* to the television broadcasting company for the film. The court "quashed" the subpoenas.[1]

In the usual situation involving a violation of a separation of witnesses order, the trial court must determine whether or not to allow the testimony of a witness who has violated the order. Here, Hardway had already testified, been cross-examined, and released by the State. Defendant, however, argues that he had considered calling her as a defense witness and that he ultimately did not do so because her testi-

---

1. These subpoenas had not been served.

mony might have been affected by the questions posed by the television reporter and her responses to those questions.

■ With respect to Defendant's motion for mistrial, we find no error in the ruling of the trial court. The denial of a motion for mistrial will be reversed only if a defendant is placed in "a position of grave peril to which he should not have been subjected." *Morgan v. State* (1981), 275 Ind. 666, 671, 419 N.E.2d 964, 967. The burden is on the defendant to show that he was harmed and placed in grave peril by the ruling. *White v. State* (1971), 257 Ind. 64, 77–78, 272 N.E.2d 312, 319–320. Defendant has failed to meet his burden.

■ With respect to the trial court's denial of his motion for a continuance and its quashing of the subpoenas, Defendant argues that such rulings made it impossible for him "to establish fully and completely the extent and true nature of Hardway's violation of the court's separation of witness order" and that, consequently, he elected not to call Hardway as a defense witness.

The obvious purpose for the continuance and the issuance of the two subpoenas was to explore the possibility that the substance of the interview between the reporter and Hardway was other than as Hardway described. Even if it were determined that the reporter asked other questions and/or elicited different responses to his questions, we fail to see how this information would bear on Defendant's decision whether to call Hardway as a defense witness. Hardway had completed her testimony and had been extensively cross-examined by the Defendant prior to the interview. The trial court had determined that the interview would not be broadcast. Moreover, Defendant did not pursue an investigation of the matter between the time the trial ended and the time the hearing on the motion to correct errors was held. Under these circumstances, we agree with the trial court that Defendant has failed to show how he was harmed by its rulings.

## ISSUE V

■ During the course of defense counsel's cross-examination of Witness Sandra Cullop, the following exchange occurred:

"Q Since this trial started, have you watched any news shows or read any newspaper accounts of this trial?

A I was sitting in the house yesterday, and they had news on. And they was talking about it, you know, and had Roger's picture and Rhonda's picture on the news." (R. at 1309).

Following the cross-examination, redirect examination, re-cross examination, and further redirect examination, defense counsel requested an opportunity to examine Cullop as to the extent of her exposure to media coverage of the trial, apparently to determine whether she had violated the separation order. The trial court denied the request, and defense counsel then moved for a mistrial or, in the alternative, a continuance so that he could determine whether Cullop's testimony had been influenced by her television viewing.

The trial court ruled, as follows:

"Again, I don't think there's any order that was disobeyed in this case. It's possible she heard a part of a report of the trial. It hasn't been shown yet that it's prejudicial and I don't think this trial should be held up or continued until you find some basis upon which to ask for a mistrial. The request for continuance is now denied and the request for mistrial is denied. (R. at 1324).

Defendant argues that "Cullop's answers on cross-examination formed a *prima facie* basis for further examination of the possibility that she had violated the court's order by viewing news media reports before testifying and that it was an abuse of discretion not to permit Hitt the time or opportunity to further establish the basis for having a mistrial granted." We do not agree. We note initially that the above exchange constitutes the only question defense counsel asked regarding Cullop's exposure to television coverage of the trial. He did not interrupt her testimony at that

time to seek the opportunity to examine her in greater depth about her exposure to media reports. Rather he waited until her examination by both parties had been completed to make his request. We agree with the trial court that Defendant was merely speculating on the possibility that further examination might reveal something favorable to his motions. "The denial of a motion grounded upon sheer speculation that some benefit might flow from it cannot be said to be arbitrary or abusive." *Brewer v. State* (1981), 275 Ind. 338, 368, 417 N.E.2d 889, 906, *cert. denied* (1982), 458 U.S. 1122, 102 S.Ct. 3510, 73 L.Ed.2d 1384. We find no abuse of discretion in the rulings of the trial court.

### ISSUE VI

Defendant argues that his sentence of sixty (60) years imprisonment is manifestly unreasonable. Ind.R.App.Rev.Sen. 2 provides:

"(1) The reviewing court will not revise a sentence authorized by statute except where such sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender.

(2) A sentence is not manifestly unreasonable unless no reasonable person could find such sentence appropriate to the particular offense and offender for which such sentence was imposed."

In the case at bar, the sixty year sentence is authorized by Ind.Code § 35–50–2–3 which provides that one who commits murder shall be imprisoned for a fixed term of forty (40) years, with not more than twenty (20) years added· for aggravating circumstances or not more than ten years subtracted for mitigating circumstances. Moreover, under the facts and circumstances of this case, as recited above, and further considering a showing of Defendant's history of substantial criminal activity, we cannot say that no reasonable person could find the sentence appropriate.

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C.J., and DeBRULER and PIVARNIK, JJ., concur.

HUNTER, J., not participating.

